UNITED STATES of America, Appellee,

v.

David Lawrence BECKLEAN, and Jack Henry Cordsen, Appellants,

Kenneth F. Brown and Mark Cello.

No. 79–1043.

United States Court of Appeals,
Eighth Circuit.

Submitted March 12, 1979.

Decided May 14, 1979.

Rehearing and Rehearing En Banc Denied June 7, 1979.

Michael J. Drape, Kansas City, Mo. (argued), for appellant David L. Becklean; Leslie Scherr, Washington, D. C. (argued), for appellant Jack H. Cordsen; William F. Krebs, and Thomas A. Wadden, Jr., Washington, D. C., on brief.

Ronald S. Reed, U. S. Atty., Kansas City, Mo. (argued), for appellee; Cynthia A.

Clark, Asst. U. S. Atty., Kansas City, Mo., on brief.

Before LAY, ROSS and McMILLIAN, Circuit Judges.

LAY, Circuit Judge.

David Lawrence Becklean and Jack Henry Cordsen appeal from an order of the United States District Court, Russell G. Clark, J., denying their motions pursuant to Rule 32(d), Fed.R.Crim.P., to withdraw their guilty pleas and vacate the sentences entered on their pleas.[1] We affirm.

This case commenced on April 27, 1978, with the return of a 48 count indictment alleging violations of 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. § 1343 (wire fraud) and 18 U.S.C. § 371 (conspiracy). Becklean was charged in 26 counts, Cordsen in 12.

Soon after the indictment was returned the United States Attorney offered defendants a plea agreement. The substance of the agreement was that if Becklean, Cordsen and another codefendant entered guilty pleas to the conspiracy count and one count of mail/wire fraud and exonerated the remaining codefendant on the record, the Government would dismiss the remaining counts, seek dismissal of all counts against the exonerated codefendant, not pursue any further indictments and make no recommendations to the court at sentencing. The offer was further conditioned on all three defendants pleading guilty. The offer was rejected.

Two months later the Government tendered a second offer that contained many of the elements of the first offer, including the provision that the Government would make no recommendation at sentencing. Becklean and Cordsen, however, would have

to plead guilty to 10 counts. Again the offer was rejected.

In late July 1978 Robert B. Schneider, the Assistant United States Attorney who had participated in the earlier plea discussions, became involved in another criminal action that required his full attention. The case was then assigned to Cynthia Clark, who up to that time had been assisting Schneider. Ms. Clark continued preparation of the case on a full time basis, with the expectation of going to trial. During that time she advised defense counsel that "all deals were off."

On the morning of September 27, 1978, two days before trial was scheduled to begin, attorneys for Becklean and Cordsen and the Government conferred concerning another plea arrangement. Eventually the attorneys, subject to their clients' approval, agreed that Becklean would enter guilty pleas to 15 counts, Cordsen would enter guilty pleas to eight counts and the remaining counts would be dismissed at the time of sentencing. Defense counsel then met with Becklean and Cordsen to discuss the proposal.

That afternoon Becklean and Cordsen entered their guilty pleas. At the change in plea hearing the court took separately the pleas of Becklean and Cordsen, conducting an inquiry into the terms of any existing plea agreement. For each defendant the court asked the Government what the plea agreement was, and in each case Ms. Clark advised only that the Government agreed to dismiss the counts remaining against each defendant. Each defendant and his counsel separately were asked whether or not Ms. Clark correctly had stated the plea agreement. Each replied that she had.[2]

---

1. The district court's opinion is reported at 464 F.Supp. 205 (W.D.Mo.1979).

2. As set forth in the district court's opinion we think the following dialogue between the court, counsel and the defendants is significant. Concerning Becklean the record reads:

    THE COURT: Is there any plea bargain arrangement in this case?

    MS. CLARK: Your Honor, only to the extent of the dismissal of the remaining counts

of the indictment upon the sentencing of this defendant.

    THE COURT: All right. Those counts that would be dismissed are Counts IX, XV and XVIII, is that correct?

    MR. COX: There would be 11 counts to be dismissed, Your Honor.

    MS. CLARK: He is named in 26 counts of the indictment.

    THE COURT: All right. So that is the only agreement, that the balance would be dismissed?

On November 20, 1978, Becklean and Cordsen appeared before Judge Clark for sentencing. The Becklean sentencing took place first. The court asked Ms. Clark whether the Government had any recommendation, whereupon she recommended that Becklean be sentenced to 25 years confinement and fined $35,000. Thomas Cox, Becklean's attorney, protested that it was his understanding that the Government would not recommend a sentence. Cox informed the court that he had told his client that the plea agreement included no sentence recommendation and that Ms. Clark's recommendation "puts me in a situation where I have misled my client, either through my inadvertence or by my misinterpretation of the Government's position, or the Government changing its position." Judge Clark stated he was not going to follow Ms. Clark's recommendation. At that time neither Cox nor Becklean moved to withdraw the guilty plea. Becklean was sentenced to eight years imprisonment and fined $26,000.

The court then sentenced Cordsen. Again Ms. Clark recommended 25 years im-

> MS. CLARK: That's right.
> THE COURT: What motivated the government to arrive at that figure?
> MS. CLARK: In the interests of saving the government a lot of money in bringing in suppliers bilked of the money from all over the United States.
> THE COURT: Insofar as any plea bargain arrangement, Mr. Cox, has Ms. Clark correctly stated any agreement between defendant and the government?
> MR. COX: She has stated it correctly, Your Honor, yes, sir.
> THE COURT: On behalf of defendant, what motivated you to agree to that?
> MR. COX: Based upon my understanding of the evidence, Your Honor, and discussing the case with the defendant, it was my judgment that this was a proper procedure for this defendant to take and I advised him so and he has decided to do this, Your Honor.
> THE COURT: All right.
> Mr. Becklean, do you concur with what your attorney has just said?
> DEFENDANT BECKLEAN: Yes, Your Honor.

464 F.Supp. at 207 08.

The Cordsen colloquy is similar:

> THE COURT: Is there any plea bargain arrangement with regard to this defendant?

prisonment and a $35,000 fine. Neither Cordsen nor his attorney made any effort either to protest the Government's recommendation or to withdraw Cordsen's guilty plea. Cordsen was sentenced to eight years imprisonment and fined $29,000.

Two days before defendants were to have commenced serving their sentences the instant motions were filed. Following an evidentiary hearing the court found that the Government had made no agreement concerning sentencing recommendations but that both defendants were under the impression, as conveyed by their attorneys, that the Government would make no recommendations concerning the sentence to be imposed. After examining the history of the plea discussions, however, the court found that defendants' impressions did not play a significant part in motivating defendants' guilty pleas and denied their motions. This appeal followed.

■ Rule 32(d), Fed.R.Crim.P., provides that a motion to withdraw a plea of guilty after sentencing will be allowed only to correct a manifest injustice.[3] *Meyer v.*

> MS. CLARK: Cordsen is named in 13 counts of the indictment. We have agreed to dismiss the remaining counts after the plea is entered and at the time of sentencing only.
> THE COURT: Mr. Duncan, do you agree as to the extent of any plea bargain agreement?
> MR. DUNCAN: That is correct, Your Honor, that was the agreement.
> THE COURT: Mr. Cordsen, is this your understanding of the agreement?
> DEFENDANT CORDSEN: Yes, Your Honor.

*Id.* at 208.

3. The ABA Standards Relating to Pleas of Guilty, § 2.1(a)(ii) (Approved Draft 1968) provide:

> Withdrawal is necessary to correct a manifest injustice whenever the defendant proves that:
> (1) he was denied the effective assistance of counsel guaranteed to him by constitution, statute, or rule;
> (2) the plea was not entered or ratified by the defendant or a person authorized to so act in his behalf;
> (3) the plea was involuntary, or was entered without knowledge of the charge or that the sentence actually imposed could be imposed; or

*United States*, 424 F.2d 1181, 1190 (8th Cir. 1970). A defendant seeking such relief bears the burden of proof and resolution of this issue is within the discretion of the trial court, the only issue on appeal being whether that discretion has been abused. *Sherburne v. United States*, 433 F.2d 1350, 1353 (8th Cir. 1970).

The defendants urge their motions to withdraw their pleas are governed by the principles stated by the Supreme Court in *Santobello v. New York*, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). There the Court wrote:

> [W]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.

*Id.* at 262, 92 S.Ct. at 499. *See also United States v. Shanahan*, 574 F.2d 1228, 1230 (5th Cir. 1978); *United States v. Miller*, 565 F.2d 1273, 1274 (3d Cir. 1977), *cert. denied*, 436 U.S. 959, 98 S.Ct. 3076, 57 L.Ed.2d 1125 (1978). The district court distinguished *Santobello* because the plea agreement under which defendants entered their pleas *did not* contain a provision that the Government would make no sentencing recommendation. The district court found defendants' understanding to the contrary was created by the mistaken impressions conveyed to defendants by their attorneys.

■ A defense counsel's mistaken representation to a defendant as to what a prosecutor promised may constitute grounds to vacate the plea, notwithstanding the prosecutor's lack of complicity in the mistake, if the representation played a substantial part in inducing the plea. *Cf. McAleney v. United States*, 539 F.2d 282, 286–87 (1st Cir. 1976); *Petraborg v. United States*, 432 F.2d 1194, 1197 (7th Cir. 1970). *See also United States v. Scharf*, 568 F.2d 106 (8th Cir.

1978). The district court found, however, that defendants' understanding did not play a substantial part in their decision to enter guilty pleas.

■ Defendants contend the district court's finding is unsupported by the record. The district court noted, however, that the dictates of Rule 11, Fed.R.Crim.P., were followed. The district court directly inquired of the existence and contents of a plea agreement. Despite an opportunity to do so, defendants did not dispute the terms of the agreement as stated by the Government. Moreover, when the court asked the Government for a recommendation and received one, neither defense counsel, both experienced attorneys, moved to withdraw defendants' guilty pleas. It is true that Becklean's attorney protested that he may have misled his client, but no motion to withdraw the plea followed. Cordsen's attorney stood mute. In addition Cordsen and his attorney responded in the negative when asked if there was any reason why sentence should not be imposed.[4]

Defendants contend the fact that they did not respond to the court's inquiry into the terms of the plea agreement is not conclusive. They rely on language in *United States v. Hammerman*, 528 F.2d 326, 331 (4th Cir. 1975):

> At arraignment Mr. Hammerman was asked whether there were any other understandings or commitments by the government. He responded negatively. We have held that even where the answer to such an inquiry denies the very existence of a plea bargain, it is not to be considered conclusive against such claim. We recognized the real possibility that fear that a truthful response might jeopardize the bargain may well produce an answer that is false. *Crawford v. United*

---

(4) he did not receive the charge or sentence concessions contemplated by the plea agreement and the prosecuting attorney failed to seek or not to oppose these concessions as promised in the plea agreement.

4. Cordsen's attorney testified that plea discussions are ongoing, implying that the offer to make no sentencing recommendations included

in the first two offers was still part of the deal. The district court found, however, that the Government had established cut-off dates for each of the first two offers, after which they expired. In addition the court found that Ms. Clark had told defendants' attorneys that "any deals were off." Defendants do not challenge these findings.

*States,* 519 F.2d 347 (4th Cir. 1975); *Walters v. Harris,* [460 F.2d 988, 993 (4th Cir. 1972), *cert. denied,* 409 U.S. 1129 (93 S.Ct. 947, 35 L.Ed.2d 262) (1973)].

Nonetheless defendants advance only generalizations concerning why they did not speak up and point to nothing which suggests that the failure to speak up was motivated by a fear of jeopardizing the plea agreement.

In determining whether manifest injustice will result the district court may consider various factors, including defendant's good faith, credibility and the weight of defendant's assertions and those on his behalf. *Meyer v. United States,* 424 F.2d 1181, 1190 (8th Cir. 1970). On this record we cannot say the district court abused its discretion in refusing to permit defendants to withdraw their guilty pleas.[5]

We agree that when counsel for Becklean called the fact to the court's attention, it would have been better for the court to have immediately questioned the defendants personally. Direct interrogation could have been made as to their understanding of the Government's recommendations and whether, notwithstanding the court's intention not to follow them, the recommendations made any significant difference in their plea bargain. Nonetheless, considering the overall circumstances, we find the district court did not abuse his discretion in refusing to set aside the guilty pleas.

---

**5.** The court sentenced defendants on November 20, 1978, and stayed execution of the sentences until January 4, 1979. A motion for an additional stay was denied on December 21, 1978. The defendants did not file the instant motions until two days prior to the time their sentences were to be executed. We likewise note, as did the district court, the great disparity between the Government's recommendations and the sentences and fines actually imposed.