JOURNAL ENTRY AND OPINION
{¶ 1} This is an appeal from an order of Judge Eileen A. Gallagher that denied Dwayne Creary's postsentence motion to withdraw his guilty plea. Creary claims he was at least entitled to a hearing on his motion based on his claim of ineffective assistance of counsel for misstating the law. We reverse and remand
 {¶ 2} On September 9, 2002, then nineteen-year-old Creary pleaded guilty to robbery, a third degree felony.[1] Before accepting his plea the judge learned that he was a citizen of Jamaica and a resident alien in the United States, and she informed him that his plea could have immigration consequences, which included the possibility of deportation. After accepting his plea, she sentenced him to one year in prison.
 {¶ 3} On March 14, 2003, Creary filed a Crim.R. 32.1 motion to withdraw his guilty plea. He claimed his lawyer advised him to plead guilty to the single count indictment because he would be subject to deportation if he went to trial, and that he believed his guilty plea would save him from deportation proceedings. He attached an affidavit stating the information his lawyer gave him, and also attached a February 11, 2003 notice from the Immigration and Naturalization Service, informing him that deportation proceedings had begun. The judge denied the motion without a hearing. Creary asserts two assignments of error, which are set forth in Appendix A.
 {¶ 4} A Crim.R. 32.1 motion to withdraw a plea after sentencing requires a showing of manifest injustice, and we review the denial of such a motion for abuse of discretion.[2] However, while we give deference to factual findings, a judge's unexplained order makes no factual findings that require deference.[3] Furthermore, we review issues of law de novo.[4]
 {¶ 5} The State argues that Creary's motion should be denied because the judge gave him the notice required by R.C. 2943.031
before accepting his plea. The motion, however, is not based on the judge's failure to give the statutorily required notice, but on ineffective assistance of counsel. He claims his lawyer advised him that he would be subject to deportation if he was tried and found guilty of the charged offense, and that he pleaded guilty to the offense because he believed the plea eliminated the possibility of deportation. He asserts he persisted in this belief even after the judge informed him deportation was a possible consequence of his plea. He also claims his lawyer should have informed him that, under federal immigration statutes, his guilty plea made deportation a virtual certainty.
 {¶ 6} A claim of ineffective assistance of counsel requires a showing that the lawyer's conduct fell below professional standards and that the defendant was prejudiced as a result.[5] When the defendant claims ineffective assistance after entering a guilty plea, he must show a reasonable probability that he would not have entered the plea absent the lawyer's conduct.[6] Creary has made a credible allegation that he pleaded guilty to the sole, unamended count of the indictment because he sought to avoid deportation, and that he would not have entered the plea if he believed it would not affect deportation. Therefore, we must determine whether his allegations, if proven, are sufficient to show his lawyer's conduct fell below professional standards.
 {¶ 7} For federal immigration purposes Creary's robbery conviction qualifies as a crime of violence[7] and, because the third degree felony offense carries a potential prison term between one and five years, it also qualifies as an aggravated felony for those purposes.[8] Therefore, the offense not only subjected Creary to deportation under Section 1227(a)(2)(A)(iii), Title 8, U.S. Code, it also subjected him to expedited removal proceedings under Section 1228, Title 8, U.S.Code. An aggravated felony creates a conclusive presumption of deportability;[9] thus, Creary's robbery conviction made his deportation substantially certain under federal immigration law, and it made no difference whether that conviction was the result of a guilty plea or was obtained after trial.
 {¶ 8} Although the State has not made the argument, at least one Ohio court of appeals opinion has found that the adoption of R.C. 2943.031 relieves the defendant's lawyer of any duty to inform his client of deportation consequences.[10]
Moreover, deportation remains a collateral consequence of conviction, and criminal defense lawyers ordinarily are not required to inform defendants of collateral consequences.[11] However, an evolving sense of the lawyer's duty indicates that such information should be given when it appears critical to the defendant's situation,[12]
and the adoption of R.C. 2943.031 is consistent with the evolution of that standard. Because Creary has alleged facts showing that his lawyer was fully aware of his interest in deportation consequences, the failure to inform him concerning deportation can be held to fall below professional standards.
 {¶ 9} Even if we relieved the lawyer of the duty to inform, however, this would not address Creary's claim that his lawyer actively misinformed him concerning deportation consequences. Regardless of whether a lawyer is required to inform a defendant of collateral consequences, the lawyer who gives such advice must ensure that the information is correct.[13] Creary claims he pleaded guilty because his lawyer told him a conviction after trial would lead to deportation; although not explicit, Creary was justified in concluding from this statement that his guilty plea would ameliorate, if not eliminate, his possibility of deportation. Even after the judge informed him that deportation remained a possibility, Creary could have relied on his lawyer's advice in believing that the possibility was lessened by his plea. As noted, however, such a belief was unjustified under the conclusive presumption of Section 1228(d), Title 8, U.S.Code.
 {¶ 10} Creary's lawyer had merely made a mistaken prediction about the likelihood of a particular outcome after correctly advising him of the legal possibilities, his ineffective assistance claim would fail, or at least require a greater showing.[14] Creary's motion, however, claims that his lawyer effectively misinformed him concerning the possibilities legally available, rather than simply misadvising him about the likelihood of a particular outcome. While we give considerable deference to a lawyer's judgment when advising a client about the likelihood of outcomes within the range of possibilities, there is no justification for misinforming a client about the state of unambiguous law.[15]
 {¶ 11} Moreover, the facts of this case and Creary's allegations do not suggest an imminent flood of unsubstantiated postconviction petitions that will require hearings to resolve. Creary pleaded guilty to an unamended indictment, and claims he did so because his lawyer effectively told him the plea would reduce his chances of deportation. Where a defendant can credibly allege that his lawyer actively misadvised him concerning the law and that he would not have pleaded guilty absent the misinformation, a hearing is required. We are not convinced, however, that innumerable defendants will automatically be entitled to hearings upon similar allegations.
 {¶ 12} Before granting a postsentence motion to withdraw under Crim.R.32.1, we must determine whether, if proven, the ineffective assistance of counsel alleged here will result in a finding of manifest injustice. The manifest injustice standard is not the same as the standard for granting relief under R.C.2953.21, the postconviction relief statute. Under that statute a finding of constitutionally ineffective assistance of counsel mandates relief; the reasonable probability of a different outcome is a sufficient showing of prejudice to make the judgment voidable under the Ohio or United States Constitutions.[16]
The manifest injustice standard, however, is intended to allow withdrawal only in "extraordinary cases."[17] Although subject to various definitions,[18] the purpose of the manifest injustice requirement in Crim.R. 32.1 is to "avoid the possibility of a defendant pleading guilty to test the weight of potential punishment."[19] The Ohio Supreme Court has generally defined manifest injustice as "a clear or openly unjust act."[20]
 {¶ 13} Creary's claim of ineffective assistance of counsel potentially satisfies the manifest injustice standard because it would be unfair to allow his plea to stand if he entered it in reliance on his lawyer's misinformation. Moreover, the motion does not defeat the purpose of the standard as used in Crim.R. 32.1, because a defendant cannot be faulted for "test[ing] the weight of potential punishment"[21] when he claims he was misinformed about the punishment he faced.
 {¶ 14} The dissent's reference to State v. McNeal[22]
is inapt, because the claim in this case concerns an attorney-client communication. In McNeal, we upheld the denial of a hearing on a Crim.R. 32.1 motion because the defendant had not explained a delay of nearly six years between his conviction and his motion, and because his claims of drug addiction and mental illness were not adequately verified by "independent" evidence.[23] This case does not involve an inordinate delay, and the nature of Creary's claim does not allow for "independent" verification beyond obtaining the testimony of his trial lawyer, who at this point may be unwilling to admit a legal mistake and testify on Creary's behalf. It would be cynical indeed to require Creary to obtain an affidavit from an adverse witness in order to merit a hearing.
 {¶ 15} As noted, Creary's claim merits further investigation because he pleaded guilty to an unamended indictment, and the record suggests that his lawyer knew his immigration status was an important concern. Although pleas to unamended indictments are not exceedingly rare, they are infrequent enough to raise a question concerning the defendant's motivation for waiving his right to trial. Under these circumstances we find this question sufficient to require a hearing.
 {¶ 16} Creary's motion and its attached materials merit a hearing on his ineffective assistance of counsel claim. The materials, however, are not sufficient to require a grant of the motion to withdraw without a hearing. Although the affidavit and the surrounding circumstances reflect a credible allegation that he was actively misinformed by his lawyer and that he chose to plead guilty because of that misinformation, he has yet to prove that allegation, and the State also is entitled to present other evidence and to test Creary's credibility through cross-examination. Therefore, we overrule the first assignment of error, but sustain the second.
 {¶ 17} Judgment reversed and remanded for further proceedings.
Diane Karpinski, J., Concurs.
Michael J. Corrigan, A.J., dissents with separate dissenting opinion.
 ASSIGNMENTS OF ERROR "I. The trial court erred when it denied appellant's motion towithdraw his guilty plea."
 "II. The trial court erred when it denied appellant's motionwithout an evidentiary hearing."
[1] R.C. 2911.02(A)(3).
[2] State v. Sneed, Cuyahoga App. No. 80902, 2002-Ohio-6502, at ¶ 12.
[3] See, e.g., Hamilton v. Ohio Savings Bank,82 Ohio St.3d 67, 1998-Ohio-365, 694 N.E.2d 442 ("[A]n unarticulated decision is less likely to convince the reviewing court that the ruling was consistent with the sound exercise of discretion.").
[4] Cooter Gell v. Hartmarx Corp. (1990), 496 U.S. 384,405, 110 S.Ct. 2447, 110 L.Ed.2d 359.
[5] Strickland v. Washington (1984), 466 U.S. 668, 687,104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Johnson, 88 Ohio St.3d 95,108, 2000-Ohio-276, 723 N.E.2d 1054.
[6] Hill v. Lockhart (1985), 474 U.S. 52, 59, 106 S.Ct. 366,88 L.Ed.2d 203.
[7] Section 16, Title 18, U.S.Code.
[8] Section 1101(a)(43)(F), Title 8, U.S.Code.
[9] Section 1228(d), Title 8, U.S.Code.
[10] State v. Garcia (Apr. 9, 1999), Defiance App. No. 4-98-24.
[11] United States v. Couto (C.A. 2, 2002), 311 F.3d 179,187-188.
[12] Id.
[13] Id.
[14] United States v. Sweeney (C.A. 2, 1989), 878 F.2d 68,70.
[15] United States ex rel Hill v. Ternullo (C.A. 2, 1975),510 F.2d 844, 847. We note that even though the dissenting judge complains that a lawyer should have no duty to inform a defendant as to collateral consequences under any circumstances, he has not argued that a lawyer's active misinformation concerning such consequences should be immune from remedy.
[16] R.C. 2953.21(A)(1).
[17] State v. Smith (1977), 49 Ohio St.2d 261, 264,361 N.E.2d 1324.
[18] Id.
[19] Id.
[20] State ex rel. Schneider v. Kreiner, 83 Ohio St.3d 203,1998-Ohio-271, 699 N.E.2d 83.
[21] Smith, supra.
[22] Cuyahoga App. No. 82793, 2004-Ohio-50.
[23] Id. at ¶ 11.