**The STATE of Ohio, Appellee,**

v.

**SOK, Appellant.**

[Cite as *State v. Sok,* 170 Ohio App.3d 777, 2007-Ohio-729.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–060033.

Decided Feb. 23, 2007.

---

33. *Tomcany v. Range Constr.,* 11th Dist. No. 2003–L–071, 2004-Ohio-5314, 2004 WL 2801671, at ¶ 44.

Joseph T. Deters, Hamilton County Prosecuting Attorney, and Philip Cummings, Assistant Prosecuting Attorney, for appellee.

McKenny & Namei and Blake Sommers, for appellant.

SUNDERMANN, Judge.

{¶ 1} Appellant, Soy Sok, was born in Cambodia. He was granted refugee status and entered the United States in 1984. In 1995, he entered a guilty plea to attempting to carry a concealed weapon, a felony of the fourth degree. In 2001, appellant was ordered by an immigration judge to be deported under

federal law based on this conviction. He had also been convicted previously of involuntary manslaughter, but this crime was not a deportable offence.

{¶ 2} Appellant filed a motion with the trial court for leave to withdraw his guilty plea on the ground that the trial court had not advised him of the possible deportation consequences of his plea. Under Ohio law, when a trial court accepts a guilty plea from one who is not a citizen of the United States, it must warn the defendant that the plea "may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." [1]

{¶ 3} It is clear from the record, and appellant now concedes, that the trial court did in fact give him the warning required by statute. But he maintains that at the time of the plea, his attorney told him that it was the attorney's understanding that there would be no consequences from the immigration authorities as a result of the plea. He argues that this advice was in error and that he based his plea, as least in part, on this erroneous advice. He presents five assignments of error, four of which assert that the trial court abused its discretion in not granting his motion to withdraw his plea; one states that his counsel was ineffective in giving the erroneous advice concerning the consequences of the plea. We consider all five together and find no merit in any of the assignments.

{¶ 4} The record reveals that the trial court advised appellant of the possible deportation consequences of his plea at the plea hearing in 1995. Moreover, the warning was also on the plea form that he signed. Appellant nonetheless argues that his plea was not made with knowledge of the possible immigration-related consequences and that he was never adequately warned. A review of the record refutes this claim. The following took place after his counsel had made the representation that he did not believe that there would be any problem with deportation:

{¶ 5} "THE COURT: if you have any questions as we go through this, just ask, because that's the whole point of what we're doing now is to make sure you understand the significance of what's going on here.

{¶ 6} "THE COURT: Gentlemen, *because you're not citizens of the United States, I must advise you your conviction, that is if you are found guilty of this offense, may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States. Do you understand that, Mr. Sok?*

{¶ 7} "DEFENDANT SOK: *Yeah.*

---

1. R.C. 2943.031(A).

{¶ 8} "THE COURT: There's been some discussion of probation, but you can get a year-and-a-half in jail. So you might get probation, but you could get a year-and-a-half in jail. So you may have the punishment of not only imprisonment, but *possible deportation.* Do you understand that, Mr. Sok?

{¶ 9} "DEFENDANT SOK: Yes. * * *

{¶ 10} "THE COURT: In each case I have forms indicating Entry Withdrawing Plea of Not Guilty, and Entering Plea of Guilty. Mr. Sok, is this your signature?

{¶ 11} "DEFENDANT SOK: Yes. * * *

{¶ 12} "THE COURT: Based on everything you know about this case, your conversations with your lawyer, the plea agreement, and what you and I have now talked about in court, what is your plea to this one count of attempted carrying a concealed weapon?

{¶ 13} "DEFENDANT SOK: Guilty.

{¶ 14} "THE COURT: Okay. I will accept the plea * * *." (Emphasis added.)

■■ {¶ 15} All of the court's warnings came after counsel's remarks. The warnings were actually given twice, and the appellant indicated on the record that he understood the warnings and still wished to plead guilty. An appellate court reviews a trial court's postsentence decision on a motion to withdraw a plea under an abuse-of-discretion standard.[2] A trial court is required to set aside a conviction and withdraw a guilty plea if the defendant establishes that the court failed to provide the warnings described in the statute.[3] That was not the case here.

■ {¶ 16} Appellant argues, however, that because his attorney gave him incorrect advice, the attorney's conduct fell below an objectively reasonable standard in violation of *Strickland v. Washington.*[4] First, the duty to notify a defendant of the potential for deportation belongs to the trial court, not counsel,[5] and the trial court fulfilled its obligation in this case. The trial court's warnings were given after counsel's remarks and clearly informed appellant that deportation was a possible consequence of his plea regardless of what his attorney had

2. *State v. Francis,* 104 Ohio St.3d 490, 2004-Ohio-6894, 820 N.E.2d 355.

3. *State v. Castillo,* 8th Dist. No. 84143, 2005-Ohio-93, 2005 WL 77083.

4. *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674.

5. *State v. Bulgakov,* 6th Dist. No. WD–03–096, 2005-Ohio-1675, 2005 WL 791403; see, also, *State v. Garcia* (Apr. 9, 1999), 3d Dist. No. 4–98–24, 1999 WL 254288.

said. A similar case was considered by the Rhode Island Supreme Court.[6] That case also involved a weapon-possession charge, and the defendant wanted his plea vacated because his attorney had said that he would not be deported as a result of entering the plea. Rhode Island's statute is similar to Ohio's, requiring warnings for nonresident defendants. The Rhode Island court stated that the defendant was made aware of the possible immigration consequences of his plea, but that there was no duty by the court to inform an alien defendant of how likely deportation would be. The second prong of *Strickland* requires that a defendant show that there is a reasonable probability that but for counsel's error, he would not have pleaded guilty and that he was prejudiced by counsel's action. The Rhode Island court held that even if counsel's misrepresentations might have fallen below acceptable standards, the defendant had not demonstrated that the outcome of the case would have been different if he had proceeded to trial. As in this case, the defendant's motion and brief were devoid of any evidence or argument tending to show his innocence of the underlying weapons charge. Therefore, we conclude in this case that it is most probable that a trial would have resulted in a conviction and that appellant would be in the same circumstance that he is in now.

{¶ 17} We conclude that a trial court fulfills its responsibility by warning a defendant pursuant to the statute and that the trial court in this case fully complied. The duty to give proper warnings was on the court, not on counsel. The trial court clearly explained to appellant that he could be deported after counsel gave his contrary opinion, and the court also asked appellant whether, knowing about the possible deportation consequences, he still wanted to plead guilty. Appellant answered that he did. Further, we hold that appellant has not demonstrated any prejudice to himself as a result of his plea, because had he gone to trial, there is nothing in the record to suggest that he would not have been found guilty and been in the same situation that he finds himself in now. The trial court did not abuse its discretion in overruling the motion to withdraw a plea entered 11 years ago. We affirm its judgment.

Judgment affirmed.

HILDEBRANDT, P.J., concurs.

PAINTER, J., dissents.

PAINTER, J., dissenting.

{¶ 18} Soy Sok was born in Cambodia or in a refugee camp outside Cambodia (no one seems to know) in 1974 during the rise of Pol Pot's Communist Khmer

---

6. *State v. Figueroa* (R.I.1994), 639 A.2d 495.

Rouge. Between his birth and his resettlement in the United States in 1984, Sok spent the majority of his life in refugee camps. He was fortunate to survive Pol Pot's mass genocide, as approximately 2,000,000 people, one-quarter of Cambodia's population—who were thought not Communist enough—were exterminated between 1976 and 1979.

{¶ 19} From this atrocity, Sok and his family were granted refugee status and came to the United States. As part of the United States' Cambodian Cluster Project, Cambodian refugees were settled throughout the Midwest. Sok settled with his family in Ohio.

## I. The Plea

{¶ 20} In 1995, Sok was arrested for carrying a concealed weapon. At Sok's plea hearing for the concealed-carry charge, his trial counsel stated that there would not be any immigration consequences from this conviction. Sok subsequently pleaded guilty to a charge of attempting to carry a concealed weapon, a fourth-degree felony. (How one attempts to carry a weapon is not clear from the record.)

{¶ 21} But the law in 1995 was clear. "Any alien who at any time after entry is convicted * * * of attempting * * * to * * * possess, or carry, any weapon, part, or accessory which is a firearm or destructive device (as defined in section 921(a) of [t]itle 18[, United States Code]) in violation of any law is deportable." [7]

{¶ 22} The majority today has decided that Sok's trial counsel was not ineffective for telling him that he would not be deported if he pleaded guilty. The majority reasons that the duty to notify a defendant of a potential deportation belongs to the trial court, not to counsel. I would prefer to consider the reality—Sok pleaded guilty thinking he would not be deported. He now will be deported—12 years after the offense—to a country he probably has never even seen. That is wrong.

## II. The Lawyer's Duty

{¶ 23} Some courts have determined that deportation is a collateral consequence of a conviction, and criminal lawyers are not ordinarily required to inform defendants of collateral consequences. [8] But other courts have reasoned that the evolving sense of a lawyer's duty should certainly include advising clients of critically important information such as deportation. [9] Sometimes the "collateral

---

7. Section 1251(a)(2)(C), Title 8, U.S.Code.

8. See *State v. Creary*, 8th Dist. No. 82767, 2004-Ohio-858, 2004 WL 351878, citing *United States v. Couto* (C.A.2, 2002), 311 F.3d 179, 187–188.

9. Id.

consequences" of a plea are much worse than any criminal penalty. Here, there is evidence that Sok's trial counsel had been in contact with the Immigration and Naturalization Service and had still advised Sok that he should plead guilty to a deportable offense.

{¶ 24} As the Ohio Eighth District Court of Appeals has said, "Even if we relieved the lawyer of the duty to inform, however, this would not address [the] claim that his lawyer actively misinformed him concerning deportation consequences. Regardless of whether a lawyer is required to inform a defendant of collateral consequences, the lawyer who gives such advice must ensure that the information is correct." [10]

{¶ 25} This is not a case in which an attorney merely made a mistake predicting a particular outcome of a trial decision—Sok was advised to plead guilty to a deportable offense by trial counsel on the explicit assurance that he would not be deported. While there must be considerable deference given to a lawyer's judgment when advising a client, "there is no justification for misinforming a client about the state of an unambiguous law." [11]

{¶ 26} Trial counsel in this case unequivocally stated to Sok that he would not face deportation if he pleaded guilty to attempting to carry a concealed weapon. That put Sok under a critical misperception that could not be cured by the court's later advice, which was clad merely in boilerplate language that he "might" have immigration "consequences."

{¶ 27} The majority's position is that Sok's trial counsel did not have a duty to notify him that a conviction of attempting to carry a concealed weapon involved a deportable offense. The majority seeks to align itself with the Third and Sixth Appellate Districts in holding that the adoption of R.C. 2943.031 relieves trial counsel of informing a client of deportation consequences and places the burden on the trial court.[12] But the Sixth Appellate District case did not involve a motion to withdraw a plea. And in the Third Appellate District case, the only issue was whether anyone gave the warnings—there the trial court obviously did read the statutory warnings. Just because these cases, in dicta, say that the duty is on the court does not mean that counsel does not have a duty to advise the client accurately.

---

10. Id.

11. Id., citing *United States ex rel. Hill v. Ternullo* (C.A.2, 1975), 510 F.2d 844, 847.

12. See *State v. Garcia* (Apr. 9, 1999), 3d Dist. No. 4–98–24, 1999 WL 254288; *State v. Bulgakov*, 6th Dist. No. WD–03–096, 2005-Ohio-1675.

{¶ 28} That distinction is illustrated by the Eight Appellate District in *State v. Creary*.[13] That court held that the "failure to inform * * * [a defendant] concerning deportation can be held to fall below professional standards."[14] And regardless of whether the attorney has this duty, the attorney surely has the duty *not to misinform*. That issue has yet to be decided, and the majority here blithely follows nonprecedent into grievous error.

### III. The Trial Court Erred by Denying Sok's Crim.R. 32.1 Motion

{¶ 29} The trial court substantially complied with R.C. 2943.031 and warned Sok that by pleading guilty, he might have the consequence of deportation. Thus, Sok is limited to arguing that he should have been permitted to withdraw his guilty plea under Crim.R. 32.1, because the plea was not knowingly and voluntarily entered as required by Crim.R. 11.

{¶ 30} Before deciding whether a postsentence motion to withdraw a guilty plea under Crim.R. 32.1 should have been granted in this case, we need to determine whether the ineffective assistance alleged by Sok led to a manifest injustice. The manifest-injustice standard is not the same as the standard under R.C. 2953.21, the postconviction-relief statute. Under that statute, a finding of constitutionally ineffective assistance of counsel mandates relief. The *Strickland* test of "a reasonable probability that the outcome would be different" provides a sufficient showing of prejudice to invalidate a conviction under the Ohio or United States Constitution.[15]

{¶ 31} The manifest-injustice standard applicable to this case intended to allow withdrawal only in "extraordinary cases."[16] The Ohio Supreme Court has generally defined manifest injustice as "a clear or openly unjust act."[17] Even with this high standard, we and other courts have previously held that erroneous advice from counsel regarding the sentence that is to be imposed may result in manifest injustice.[18]

---

13. See *State v. Creary*, 8th Dist. No. 82767, 2004-Ohio-858, 2004 WL 351878.

14. Id. at ¶ 8.

15. See *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052, 80 L.Ed.2d 674; R.C. 2953.21.

16. See *Creary*, 8th Dist. No. 82767, 2004-Ohio-858, 2004 WL 351878, citing *State v. Smith* (1977), 49 Ohio St.2d 261, 264, 3 O.O.3d 402, 361 N.E.2d 1324.

17. Id., citing *State ex rel. Schneider v. Kreiner* (1998), 83 Ohio St.3d 203, 699 N.E.2d 83.

18. See *State v. Collins* (Feb. 13, 1998), 1st Dist. No. C–970138, 1998 WL 57791; *United States v. Becklean* (C.A.8, 1979), 598 F.2d 1122, 1125; *State v. Blatnik* (1984), 17 Ohio App.3d 201, 17 OBR 391, 478 N.E.2d 1016.

{¶ 32} Here, the additional "sentence" of being deported to a country Sok has perhaps never seen and leaving the United States, the only home he has had since age ten, is a much weightier consequence than the six-month suspended sentence and the $50 fine he actually received in the underlying case.

{¶ 33} Sok's claim of ineffective assistance of counsel satisfies the manifest-injustice standard applicable to Crim.R. 32.1 postsentence motions to withdraw guilty pleas. Sok's guilty plea could not have been voluntarily and intelligently made under Crim.R. 11 because his trial counsel provided incorrect information about an unambiguous law.

{¶ 34} I would thus sustain Sok's assignment of error, reverse his conviction, and remand this cause with instructions that the trial court grant his Crim.R. 32.1 motion to withdraw his guilty plea, thus saving him from a terrible and unjust fate.