[Cite as *State v. Passafiume*, 2018-Ohio-1083.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 105438 and 105439**

**STATE OF OHIO**

PLAINTIFF-APPELLANT

vs.

**SALVATORE PASSAFIUME**

DEFENDANT-APPELLEE

**JUDGMENT:**
REVERSED AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case Nos. CR-09-525815-A and CR-09-529125-A

**BEFORE:** McCormack, P.J., Stewart, J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** March 22, 2018

**ATTORNEYS FOR APPELLANT**

Michael C. O'Malley
Cuyahoga County Prosecutor

By: Frank Romeo Zeleznikar
Assistant County Prosecutor
Justice Center, 8th Floor
1200 Ontario Street
Cleveland, OH   44113


**ATTORNEY FOR APPELLEE**

Margaret W. Wong
Margaret Wong & Associates
3150 Chester Avenue
Cleveland, OH 44114


TIM McCORMACK, P.J.:

{¶1}    In this consolidated appeal, appellant, the state of Ohio, appeals from the order of the trial court granting appellee, Salvatore Passafiume's motions to withdraw his guilty pleas. Upon thorough review of the record and applicable law, we reverse the trial court.

Procedural and Factual Background

{¶2}    In June 2009, Passafiume was charged with aggravated theft and theft in Cuyahoga C.P. No. CR-09-525815 and tampering with evidence, drug possession, and possessing criminal tools in Cuyahoga C.P. No. CR-09-529125.   On November 17, 2009, he pleaded guilty to aggravated theft as charged in the indictment in Case No. CR-09-525815 and attempted tampering with evidence and drug possession in Case No. CR-09-529125.

**{¶3}** Prior to entering his guilty pleas, the court engaged in a full colloquy with Passafiume and advised him of the constitutional rights he was waiving. The court also advised Passafiume, as a noncitizen of the United States, "[Y]ou're hereby advised that conviction of the offenses to which you're pleading guilty may have the consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." When asked if he understood, Passafiume replied, "Yes, your Honor." The court then found Passafiume's pleas to be knowingly, voluntarily, and intelligently entered, and it found him guilty accordingly. The court sentenced Passafiume to five years of community control sanctions. The court also suspended Passafiume's driving privileges for five years and ordered Passafiume to pay court costs in both cases and restitution of $595 in Case No. CR-09-525815. Thereafter, in August 2012, upon the probation officer's request, Passafiume's community control sanctions were terminated early. He did not appeal from his sentence or convictions.

**{¶4}** On December 20, 2016, approximately seven years after entering his guilty pleas, Passafiume filed a Crim.R. 32.1 motion to withdraw guilty plea (in both lower court cases), claiming that he was denied the effective assistance of counsel prior to entering his November 2009 guilty pleas. In support, he argued that his attorney failed to advise him that his pleas would result in deportation. While acknowledging in an affidavit attached to his motions that the trial court "mention[ed] something about [immigration consequences]," he contended he was "nervous * * * and did not think I would get deported as a result of the conviction since my attorney never mentioned anything about it." Passafiume stated that he was placed in removal proceedings in October 2016, he is subject to mandatory detention, and he had been in deportation proceedings previously but had received a waiver that allowed him to remain in the

United States. He also contends that trial counsel failed to properly investigate his defenses and pressured him into pleading.

{¶5} The state opposed Passafiume's motions, stating that Passafiume has failed to demonstrate a manifest injustice. In support, the state provided that Passafiume cannot establish ineffective assistance of counsel because (1) counsel was not deficient — counsel was not required by the law at the time of Passafiume's conviction to advise him of deportation consequences, and there is no evidence, other than a self-serving affidavit, that defense counsel's performance otherwise fell below the standard of care; and (2) Passafiume cannot demonstrate prejudice.

{¶6} On February 3, 2017, the trial court held a hearing on Passafiume's motions. During the hearing, Passafiume provided that he is a citizen of Italy and he came to the United States with his family in 1959 as an infant, and he has been a permanent resident of the United States. When he was a child, he and his family moved from New York City to Cleveland, and he has lived in Cleveland ever since. He stated that he could have become a United States citizen, but he "never thought about it."

{¶7} Passafiume testified concerning the underlying offenses. He stated that he was an innocent bystander who was unaware that an acquaintance of his whom he had driven to Walmart, the codefendant in Case No. CR-09-525815, had stolen a computer from the store. Passafiume also stated that he was an innocent bystander in Case No. CR-09-529125, where the police discovered drugs in the car he was driving. He contends that the drugs were discovered on the passenger seat where his friend, the codefendant in that case, had been seated prior to the police removing the friend from the vehicle. Passafiume testified that he explained all the above to his trial counsel, yet counsel advised him to plead no contest.

**{¶8}** Passafiume testified that his prior attorney never advised him of any deportation consequences should he be convicted. He stated that he would not have pleaded guilty had he known he would be placed in mandatory detention and immigration proceedings, explaining that his entire family is in the United States and he has "no life" in Italy. Passafiume also explained that during the plea hearing, he did not fully understand when the court advised him about deportation consequences because he was "taking a lot of pain meds and stuff like that." He conceded that he "should have thought about the situation a little more, knowing that I was innocent."

**{¶9}** Passafiume also testified that in October 2016, he went to Cleveland Municipal Court to pay a fine on an OVI case for which he had served six months community control sanctions, and he was detained by immigration officials. He stated on cross-examination that he had been in deportation proceedings previously but received a waiver that allowed him to stay in the United States. He explained that, while he was ill, immigration officials had come to his home in 2004 for a petty theft charge. The supervisor "let him be," however, because he was ill.

**{¶10}** After the hearing, the trial court issued one written ruling on Passafiume's motions to withdraw his guilty pleas. The court determined that *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), applied retroactively, and applying its "equity powers," it granted the motions.

**{¶11}** The state now appeals the court's decision, assigning the following errors for our review:

> I. The trial court erred in holding that the holding set forth in *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010) applies retroactively.

II.     Assuming, arguendo, that *Padilla* is retroactive, the trial court abused its discretion when it applied the wrong legal standard in granting Appellee's motion to withdraw his guilty plea.

Law and Analysis

{¶12} The state of Ohio contends on appeal that the trial court erred when it granted the appellee's motions to withdraw his November 2009 guilty pleas. In support, it argues that Passafiume has not demonstrated his trial counsel was ineffective because (1) trial counsel was not required to advise Passafiume of deportation consequences, and therefore, counsel's performance was not deficient; and (2) Passafiume cannot establish prejudice. The state also argues that the trial court failed to apply the correct legal standard in granting Passafiume's motions to withdraw.

{¶13} Motions to withdraw guilty pleas are governed by Crim.R. 32.1. Under this rule, "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea." Crim.R. 32.1. A defendant who seeks to withdraw a plea of guilty after the imposition of sentence has the burden of establishing the existence of manifest injustice. *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977), paragraph one of the syllabus. And a self-serving affidavit by the moving party is generally insufficient to demonstrate manifest injustice. *State v. Geraci*, 8th Dist. Cuyahoga Nos. 101946 and 101947, 2015-Ohio-2699, ¶ 10.

{¶14} "Manifest injustice relates to some fundamental flaw in the proceedings which result[s] in a miscarriage of justice or is inconsistent with the demands of due process." *State v. Williams*, 10th Dist. Franklin No. 03AP-1214, 2004-Ohio-6123, ¶ 5. It has been defined as a

"clear or openly unjust act." *State ex rel. Schneider v. Kreiner*, 83 Ohio St.3d 203, 208, 699 N.E.2d 83 (1998). Under the manifest injustice standard, a postsentence motion to withdraw a plea is permitted "only in extraordinary cases." *State v. Montgomery*, 2013-Ohio-4193, 997 N.E.2d 579, ¶ 61 (8th Dist.), citing *Smith* at 264.

**{¶15}** The determination of whether the defendant has met his or her burden of establishing "a manifest injustice" is within the sound discretion of the trial court. *State v. Vinson*, 2016-Ohio-7604, 73 N.E.3d 1025, ¶ 42 (8th Dist.), citing *Smith* at paragraph two of the syllabus. "[T]he good faith, credibility and weight of the movant's assertions in support of the motion are matters to be resolved by that court." *Smith*. And an "undue delay" between the occurrence of the alleged cause for withdrawal and the filing of the motion is a factor which adversely affects the credibility of the movant and mitigates against the granting of the motion. *Id.* at paragraph three of the syllabus.

**{¶16}** An abuse of discretion may exist where the trial court "'applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.'" *Cruz v. English Nanny & Governess School, Inc.*, 8th Dist. Cuyahoga No. 103714, 2017-Ohio-4176, ¶ 112, quoting *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, ¶ 15 (8th Dist.).

**{¶17}** The crux of Passafiume's argument is that his plea was invalid because trial counsel was ineffective for failing to advise him regarding possible immigration consequences resulting from entering a guilty plea. Ineffective assistance of counsel can constitute a manifest injustice warranting a withdrawal of a guilty plea. *See, e.g., State v. Montgomery*, 8th Dist. Cuyahoga No. 103398, 2016-Ohio-2943, ¶ 4. The defendant, however, bears the burden of

showing that counsel's performance led to a manifest injustice. *State v. Bankston*, 8th Dist. Cuyahoga No. 92777, 2010-Ohio-1576, ¶ 53.

{¶18} To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate: (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable representation; and (2) that counsel's errors prejudiced the defendant. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraphs two and three of the syllabus. The defendant must prove both prongs of the *Strickland* test to prevail. *Strickland* at 687.

{¶19} In the context of a guilty plea, the defendant must show that counsel's failure to provide advice impaired the knowing and voluntary nature of the plea. *State v. Milczewski*, 8th Dist. Cuyahoga No. 97138, 2012-Ohio-1743, ¶ 5. In such a case, the defendant will prevail by demonstrating that there is a reasonable probability that, but for counsel's deficient performance, he would not have pleaded guilty and would have insisted on going to trial. *State v. Williams*, 8th Dist. Cuyahoga No. 100459, 2014-Ohio-3415, ¶ 11, citing *State v. Xie*, 62 Ohio St.3d 521, 524, 584 N.E.2d 715 (1992), and *Hill v. Lockhart*, 474 U.S. 52, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

{¶20} In 2010, the United States Supreme Court held that an attorney's performance is deficient when he or she has failed, at a minimum, to advise a noncitizen defendant-client that "pending criminal charges may carry a risk of adverse immigration consequences." *Padilla*, 559 U.S. at 369, 130 S.Ct. 1473, 176 L.Ed.2d 284. An attorney's performance is also deficient when his or her advice regarding deportation issues, which are "easily determined from reading the removal statute," is incorrect. *Id.* We find, however, that *Padilla* does not apply in this case.

**{¶21}** In *Chaidez v. United States*, 568 U.S. 342, 133 S.Ct. 1103, 185 L.Ed.2d 149 (2013), the United States Supreme Court applied the principles outlined in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), and held that *Padilla* could not be applied retroactively to convictions that had become final before March 31, 2010, when *Padilla* was decided. In so holding, the Supreme Court determined that *Padilla* had announced a "new rule":

> So when we decided *Padilla*, we answered a question about the Sixth Amendment's reach that we had left open, in a way that altered the law of most jurisdictions * * *.
>
> Before *Padilla*, we had declined to decide whether the Sixth Amendment had any relevance to a lawyer's advice about matters not part of a criminal proceeding. Perhaps some advice of that kind would have to meet *Strickland's* reasonableness standard — but then again, perhaps not: No precedent of our own "dictated" the answer. And as the lower courts filled the vacuum, they almost uniformly insisted on what *Padilla* called the "categorica[l] remov[al]" of advice about a conviction's non-criminal consequences — including deportation — from the Sixth Amendments scope. It was *Padilla* that first rejected that categorical approach — and so made the *Strickland* test operative — when a criminal lawyer gives (or fails to give) advice about immigration consequences. * * * *Padilla's* holding that the failure to advise about a non-criminal consequence could violate the Sixth Amendment would not have been — in fact, was not — "apparent to all reasonable jurists" prior to our decision. *Padilla* thus announced a "new rule."

(Citations omitted.) *Chaidez* at 352-354.

> **{¶22}** The First District Court of Appeals, in following *Chaidez*, explained:
>
> In *Teague*, the United States Supreme Court held that a person whose conviction is final before a case is decided may avail himself of that decision in a collateral proceeding if the case applies a settled rule, but not if the case announces a "new rule," unless that new rule constitutes either a rule placing "conduct beyond the power of the [government] to proscribe" or a "watershed rule[] of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Teague*, 489 U.S. at 311, 109 S.Ct. 1060, 103 L.Ed.2d 334. The court in *Teague* stated that "a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." *Id.* at 301. And the court later declared that a holding is not dictated by existing precedent unless it would have been "apparent to all reasonable jurists." *Lambrix v. Singletary*, 520 U.S. 518, 527-528, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997).

*State v. Bishop*, 2014-Ohio-173, 7 N.E.3d 605, ¶ 9 (1st Dist.), citing *Chaidez* at 347-357.

{¶23} As the First District stated, the duty imposed upon counsel to provide a noncitizen client an advisement concerning the immigration consequences of a plea "cannot be said to have been dictated by Ohio precedent * * *." *Bishop* at ¶ 14. Prior to *Padilla*, Ohio courts have held that the duty to notify a defendant of immigration consequences is on the trial court, not counsel. *See State v. Hamilton*, 8th Dist. Cuyahoga No. 90141, 2008-Ohio-455, ¶ 18, citing *State v. Sok*, 170 Ohio App.3d 777, 2007-Ohio-729, 869 N.E.2d 60 (1st Dist.); *State v. Bulgakov*, 6th Dist. Wood No. WD-03-096, 2005-Ohio-1675; *State v. Garcia*, 3d Dist. Defiance No. 4-98-24, 1999 Ohio App. LEXIS 1768 (Apr. 9, 1999); *State v. Lei*, 10th Dist. Franklin No. 05AP-288, 2006-Ohio-2608, ¶ 32 ("Though the court must inform defendants of deportation consequences prior to accepting a plea of guilty or no contest, pursuant to R.C. 2943.031, no statutory or decisional authority requires trial counsel to advise a defendant of the civil, collateral consequence of deportation for purposes of the defendant's decision as to whether to accept a plea agreement or to exercise her constitutional right to trial"); *see also State v. Arvanitis*, 36 Ohio App.3d 213, 218, 522 N.E.2d 1089 (9th Dist.1986) (stating that before R.C. 2943.031 was enacted, it was "not disposed to announce a hard and fast rule" that counsel had violated a duty in failing to advise a noncitizen client concerning the immigration consequences of a guilty plea). Thus, *Padilla* announced a new rule in Ohio.

{¶24} Although this court has not previously addressed retroactive application of *Padilla*, we note that at least four Ohio appellate courts have refused to apply *Padilla* retroactively. *See State v. Bravo*, 2017-Ohio-272, 81 N.E.3d 919 (9th Dist.) (holding that the trial court did not err by denying defendant's motion to withdraw her guilty plea pursuant to Crim.R. 32.1 on the basis of ineffective assistance of trial counsel, because she could not rely on *Padilla* to establish

counsel's deficient performance merely because he did not advise her that there could be adverse immigration consequences if she were to plead guilty); *State v. Brooks*, 7th Dist. Jefferson No. 14 JE 3, 2015-Ohio-836 (finding that because *Padilla* did not apply retroactively to defendant's case, he had not met the exception to the timeliness requirement for postconviction petitions); *Bishop* (finding the trial court abused its discretion in retroactively applying *Padilla* to permit defendant to withdraw his no contest plea under Crim.R. 32.1 based on the failure of his counsel to advise him that deportation was mandatory); *State v. Spivakov*, 10th Dist. Franklin Nos. 13AP-32 and 13AP-33, 2013-Ohio-3343 (holding the trial court did not err in denying without a hearing defendant's motion to withdraw his guilty pleas under Crim.R. 32.1, because convictions became final "long before *Padilla* was decided"). We decline to depart from our sister courts.

{¶25} Here, Passafiume's conviction became final in 2009, when the time for perfecting a direct appeal had expired. *See Bishop*, 2014-Ohio-173, 7 N.E.3d 605, at ¶ 10, citing *Teague* at 295. Because Passafiume's conviction was final before *Padilla* was decided, he cannot rely on it to establish trial counsel's deficient performance where counsel did not advise him that he may be deported if he were to plead guilty. *Bravo* at ¶ 12.

{¶26} To the extent that Passafiume argues counsel was deficient in failing to investigate his defenses and pressuring him to plead, we find no merit. Passafiume offered only his own self-serving affidavit in support of his motion to withdraw. As previously stated, a defendant's self-serving affidavit is generally insufficient to demonstrate manifest injustice. *Geraci*, 8th Dist. Cuyahoga Nos. 101946 and 101947, 2015-Ohio-2699, at ¶ 10. When a defendant asserts that his guilty plea was involuntary, "a record reflecting compliance with Crim.R. 11 has greater probative value than a petitioner's self-serving affidavit." *State v. Yearby*, 8th Dist. Cuyahoga No. 79000, 2002 Ohio App. LEXIS 199, 10 (Jan. 24, 2002); *see also State v. Shaw*, 8th Dist.

Cuyahoga No. 102802, 2016-Ohio-923, ¶ 10 (a defendant's self-serving statements or affidavits alleging a coerced guilty plea are insufficient to rebut the record on review that shows that his plea was voluntary). And "'a court's adherence to Crim.R. 11 raises a presumption that the plea was voluntarily entered.'" *State v. Elliott*, 8th Dist. Cuyahoga No. 103472, 2016-Ohio-2637, ¶ 25, citing *State v. Wittine*, 8th Dist. Cuyahoga No. 90747, 2008-Ohio-5745, ¶ 8.

{¶27} Here, Passafiume stated in his affidavit that, concerning the theft case (Case No. CR-09-525815), he did not know the computer was stolen and he was not paid to drive his codefendant to the store. Passafiume also averred that he told his attorney that he was innocent, but she told him he "had no real choice but to enter a plea" and that it was unlikely he would receive any jail time. He stated that he "reluctantly agreed" to enter a guilty plea in that case, and he would not have pleaded guilty had his counsel "performed competently and advised me to proceed to trial rather than taking a plea to a crime I did not commit." Passafiume did not, however, address the charges of tampering with evidence, drug possession, and possessing criminal tools in his second case (Case No. CR-09-529125).

{¶28} At the hearing on his motion to withdraw, he offered similar self-serving statements. He testified that he was innocent of the charges, he advised his attorney of the circumstances, the attorney never told him about deportation consequences, and he would not have pleaded guilty had he known about deportation. He acknowledged, however, that he "just wanted to get it over with. I was sick at the time."

{¶29} On the other hand, the record of the plea hearing in this case demonstrates that the trial judge engaged in a comprehensive Crim.R. 11 colloquy, and Passafiume entered his plea knowingly and voluntarily. When the court inquired whether any threats or promises had been made to induce him to plead, Passafiume replied, "No, your Honor." When the court asked

Passafiume if he was satisfied with trial counsel's representation, he replied, "Yes." Passafiume also advised the court that he was not under the influence of any alcohol or narcotics or any "medication that affects [his] judgment." When the court asked Passafiume if he "underst[ood] what we're doing here today," he replied, "Yes, I do, your Honor." Upon learning that Passafiume was a noncitizen of the United States, the court advised him that conviction of his offenses may have "consequences of deportation, exclusion from admission to the United States, or denial of naturalization pursuant to the laws of the United States." Passafiume advised the court that he understood.

{¶30} Furthermore, in addressing the court at sentencing, counsel stated that Passafiume was in a drug treatment program since October 2009 and she addressed the issues in the presentence investigation report:

> Mr. Passafiume had a bout with drug use again having relapsed. He got himself back into the [drug treatment] program at the Keating Center. He was residing there, doing well.
>
> * * * [B]ased on his medical conditions, [the Keating Center] no longer wanted him to reside in the program but that he is still participating in the program on an outpatient basis as well as going to all of his meetings, etc. * * *.
>
> He is doing everything that he needs to do in order to maintain his sobriety. He has at all times been very upset about the fact that he found himself in a situation with drugs again.
>
> As far as the theft case is concerned, your Honor, basically, Mr. Passafiume went to the store with a friend of his * * * who went to go buy a computer. It turned out that they were going to try and use their dead father's credit card, etc., but [he] ended up walking out without paying for it at all, and Mr. Passafiume was in the car waiting for them. That person has since moved to Florida and we were un[able] to locate [him], and therefore, he took responsibility for the computer.
>
> Your Honor, basically, Mr. Passafiume has started himself on the road to recovery. He's done everything necessary, even prior to pleading in these cases, and I would just ask that the court give him an opportunity for community control sanctions.

**{¶31}** When asked if Passafiume had anything to say, he responded:

[A]s far as the theft case, your Honor, I know that I did wrong. And the officer that took my statement, they said the reason why they had charges is because I said I was taking money. After he got rid of the computer I meant he was paying me out of his own pocket. * * * I had no clue that he was stealing the computer. But I wanted to just get it over with, and I'll take responsibility and pay for it.

**{¶32}** A fair reading of the record belies Passafiume's assertions that trial counsel failed to investigate his defenses, that he was dissatisfied with counsel, or that trial counsel pressured him into pleading guilty. Passafiume has therefore not demonstrated that trial counsel's representation was deficient.

**{¶33}** In its order granting Passafiume's motions to withdraw, the trial court essentially decried the unfairness of Passafiume's present situation:

This defendant has, for all intents and purposes, been a citizen of the United States for all but 13 months of his life. He has been a working person, who presumably has paid taxes over his lifetime and is now receiving social security benefits. He has no connection with Italy other than the fact that he was born there. The crimes at issue were not crimes of violence and * * * he could easily have presented [a defense].

**{¶34}** We note, however, that Passafiume bears the burden of demonstrating manifest injustice in the plea proceeding. *State v. Sneed*, 8th Dist. Cuyahoga No. 80902, 2002-Ohio-6502, ¶ 13 (a manifest injustice is "an extraordinary and fundamental flaw in the plea proceeding"). The manifest injustice "relates to some fundamental flaw in the proceedings which result in a miscarriage of justice or is inconsistent with the demands of due process." *Williams*, 10th Dist. Franklin No. 03AP-1214, 2004-Ohio-6123, ¶ 5. And where, as in this case,

the defendant claims his trial counsel was ineffective at the time he entered his plea, he bears the burden of showing that counsel's performance led to a manifest injustice. *Bankston*, 8th Dist. Cuyahoga No. 92777, 2010-Ohio-1576, at ¶ 53.

**{¶35}** As we discussed previously, Passafiume's trial counsel was not obligated to advise Passafiume of immigration consequences resulting from his guilty pleas. Rather, the law at the time he entered his plea imposed a duty upon the trial court, and the trial court did in fact provide the advisement. Additionally, Passafiume told the court that he understood the court's advisement. In all other respects, the record reflects the trial judge engaged in a comprehensive Crim.R. 11 colloquy and Passafiume entered his plea knowingly and voluntarily. Passafiume has therefore not demonstrated that counsel's performance surrounding the plea hearing led to a manifest injustice.

**{¶36}** Furthermore, we note that Passafiume had notice of potential immigration issues several years prior to pleading guilty in November 2009. The record shows that Passafiume had been in deportation proceedings in 2004, presumably due to his earlier convictions, but received a waiver that allowed him to stay in the United States. On cross-examination, Passafiume explained what happened:

> Passafiume: What they did, they didn't detain me, they came to my house. I was sick * ** and the immigration officer just called his supervisor and said that he was sick, so just let him be.
>
> Prosecutor: So this was in 2004, and I'm sure when you got that call there was a chance that you might be deported, I'm sure that you were worried about it?
>
> Passafiume: Yes.
>
> Prosecutor: So that was something that was on your mind?

Passafiume:  Yes.  And I didn't commit any crimes until those stupid things with those guys, I was fine.  As long as you don't get into no trouble, everything is fine.  And I did not do anything until that happened with those idiots.

{¶37} Thus, the record demonstrates that prior to entering his guilty plea in November 2009, Passafiume understood, to some degree, that his legal troubles were threatening his ability to remain in the United States.  *See State v. Huang*, 8th Dist. Cuyahoga No. 99945, 2014-Ohio-1511, ¶ 16.

{¶38} Under these circumstances, we cannot find that Passafiume has demonstrated a fundamental flaw in his plea proceedings that resulted in a manifest injustice.  We therefore sustain the assignments of error, reverse the judgment of the trial court, and remand for further proceedings consistent with this opinion.

It is ordered that appellant recover of said appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, PRESIDING JUDGE

MELODY J. STEWART, J., CONCURS;
PATRICIA ANN BLACKMON, J., CONCURS IN JUDGMENT ONLY