[Cite as *State v. Bishop*, 2014-Ohio-173.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-130074 |
| | | TRIAL NO. 06CRB-25910 |
| Plaintiff-Appellant, | : | |
| vs. | : | *O P I N I O N.* |
| HAROLD BISHOP, | : | |
| Defendant-Appellee. | : | |


Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Reversed and Cause Remanded

Date of Judgment Entry on Appeal:  January 22, 2014


*John Curp,* City Solicitor, *Charles Rubenstein,* City Prosecutor, and *Heidi Rosales,* Senior Assistant City Prosecutor, for Plaintiff-Appellant,

*McKinny & Namei Co., LPA,* and *Paul W. Shonk,* for Defendant-Appellee.


Please note:  we have removed this case from the accelerated calendar.

Per Curiam.

{¶1}    Plaintiff-appellant the state of Ohio appeals from the Hamilton County Municipal Court's judgment granting defendant-appellee Harold Bishop's Crim.R. 32.1 motion to withdraw his no-contest plea.  Upon our determination that the court abused its discretion in retroactively applying *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), to permit Bishop to withdraw his plea, we reverse the court's judgment.

{¶2}    Bishop was convicted in 2006 upon his no-contest plea to domestic violence.  He did not appeal his conviction.  Instead, in 2011, he unsuccessfully sought to expunge it.  And in 2012, he moved under Crim.R. 32.1 to withdraw his no-contest plea on the ground that his plea had been the unintelligent product of his trial counsel's ineffectiveness in advising him concerning the immigration consequences of his conviction.  Following a hearing, the common pleas court granted the motion, and this appeal followed.

{¶3}    On appeal, the state advances a single assignment of error, challenging the granting of Bishop's motion.  The challenge is well taken.

{¶4}    Crim.R. 32.1 authorizes the postconviction withdrawal of a guilty or no-contest plea only "to correct manifest injustice."  *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977), paragraph one of the syllabus.  The defendant bears the burden of proving "manifest injustice."  The determination of whether the defendant has sustained that burden is committed to the sound discretion of the trial court and will not be disturbed on appeal unless the court abused its discretion.  *Id.* at paragraph two of the syllabus.

2

{¶5} The due-process protections afforded by Article I, Section 16 of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution require that a guilty or no-contest plea "represent[] a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). A defendant who seeks to withdraw his plea on the ground that the plea was the unintelligent product of his counsel's ineffectiveness must demonstrate that counsel's representation was constitutionally deficient, *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and that "there is a reasonable probability that, but for [this deficiency, the defendant] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *see State v. Xie*, 62 Ohio St.3d, 521, 524, 584 N.E.2d 715 (1992); *State v. Blackwell*, 1st Dist. Hamilton No. C-970150, 1998 Ohio App. LEXIS 1856 (May 1, 1998).

{¶6} *Inaccurate advice concerning immigration consequences.* In support of his motion to withdraw his no-contest plea, Bishop contended that his trial counsel's representation had been constitutionally deficient because counsel had advised him that the domestic-violence conviction resulting from his no-contest plea "may" make him deportable, when his conviction mandated deportation. Bishop also insisted that if he had known that his conviction would make him deportable, he would not have entered the plea.

{¶7} For purposes of the Sixth Amendment right to the effective assistance of counsel, a plea negotiation is a critical phase of a criminal prosecution. *Hill* at 57.

In *Padilla*, the United States Supreme Court held that the Sixth Amendment imposes upon counsel in a criminal case a duty to accurately advise a noncitizen client concerning the immigration consequences of a guilty plea. *Padilla*, 559 U.S. at 374, 130 S.Ct. 1473, 176 L.Ed.2d 284. If the consequence of deportation can be "easily determined from reading the removal statute," counsel must inform his client of that fact. "When the law is not succinct and straightforward," counsel "need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.* at 368-369.

{¶8} Bishop testified at the hearing that his counsel had advised him that his conviction upon his no-contest plea to domestic violence "may" result in his deportation. But federal immigration law expressly mandates the removal of "[a]ny alien * * * convicted of a crime of domestic violence." 8 U.S.C. 1227(a)(2)(E)(i). Because counsel did not advise Bishop that deportation was mandatory, counsel's representation was constitutionally deficient.

{¶9} ***Padilla is not retroactive.*** But in *Chaidez v. United States*, ____ U.S. ____, 133 S.Ct. 1103, 185 L.Ed.2d 149 (2013), the Supreme Court, applying the principles set forth in *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), held that *Padilla* could not be applied retroactively to convictions that had become final before March 31, 2010, when the case was decided, because the case announced a "new rule" when it answered an open question concerning the reach of the Sixth Amendment in a way that altered the law of most jurisdictions. *Chaidez* at 1107-1113.

{¶10} A conviction becomes final when all appellate remedies have been exhausted. *Teague* at 295; *Agee v. Russell*, 92 Ohio St.3d 540, 2001-Ohio-1279, 751

4

N.E.2d 1043. Thus, Bishop's conviction became final in 2006, when the time for perfecting a direct appeal from his conviction had expired. Because Bishop's conviction was final before *Padilla* was decided, the municipal court could not, consistent with *Chaidez*, allow Bishop to withdraw his no-contest plea based on a violation of the Sixth Amendment right announced in *Padilla*.

{¶11} ***We follow Chaidez***. Nevertheless, Bishop urges us to follow the lead of the Supreme Judicial Court of Massachusetts in *Commonwealth v. Sylvain*, 466 Mass. 422, 995 N.E.2d 760 (2013), and hold that he was entitled to relief under Crim.R. 32.1, because the rule announced in *Padilla* was not a "new rule" under Ohio law. We decline to do so.

{¶12} In *Teague*, the United States Supreme Court held that a person whose conviction is final before a case is decided may avail himself of that decision in a collateral proceeding if the case applies a settled rule, but not if the case announces a "new rule," unless that new rule constitutes either a rule placing "conduct beyond the power of the [government] to proscribe" or a "watershed rule[] of criminal procedure implicating the fundamental fairness and accuracy of the criminal proceeding." *Teague*, 489 U.S. at 311, 109 S.Ct. 1060, 103 L.Ed.2d 334. The court in *Teague* stated that "a case announces a new rule if the result was not dictated by precedent existing at the time the defendant's conviction became final." *Id.* at 301. And the court later declared that a holding is not dictated by existing precedent unless it would have been "apparent to all reasonable jurists." *Lambrix v. Singletary*, 520 U.S. 518, 527-528, 117 S.Ct. 1517, 137 L.Ed.2d 771 (1997). The Court in *Chaidez* applied *Teague* and *Lambrix* to hold that *Padilla* had stated a new rule. *See Chaidez*, 133 S.Ct. at 1107, 185 L.Ed.2d 149.

5

{¶13} In *Danforth v. Minnesota*, 552 U.S. 264, 282, 128 S.Ct. 1029, 169 L.Ed.2d 859 (2008), the Supreme Court held that *Teague* does not bar a state from giving a federal constitutional rule deemed "new" under *Teague* broader retroactive effect in its own state collateral proceedings. In *Sylvain*, the Supreme Judicial Court of Massachusetts exercised its authority under *Danforth* to define and determine under state law what constitutes a "new rule" and held that the *Padilla* rule was not "new" under Massachusetts law. *Sylvain* at 435. Massachusetts's highest court had long ago adopted the *Teague* analysis for determining retroactivity. *See Commonwealth v. Bray*, 407 Mass. 296, 300-301, 553 N.E.2d 538 (1990). But in *Sylvain*, the court said that the Supreme Court since *Teague* had "greatly expanded the meaning of what is 'new' to include results not apparent to all reasonable jurists at the time." *Sylvain* at 433. Distinguishing the post-*Teague* precedent, the court applied what it called the "original formulation" of the *Teague* analysis, and it concluded that *Padilla* had not announced a new rule, because the Supreme Court in *Padilla* had simply applied the settled law of *Strickland* to a specific factual situation, and because "Massachusetts precedent at the time *Padilla* was decided would [not] have dictated an outcome contrary to that in *Padilla*."[1] *Id.* The court also found in the commonwealth's constitution a right, "coextensive" with the Sixth Amendment right, to accurate advice concerning immigration consequences, and the court determined, for the same reasons, that its recognition of that right did not constitute a new rule. *Id.* at 436.

---

[1] We note that the Supreme Court in *Teague* stated that "a case announces a new rule if the result was not dictated by *precedent existing at the time the defendant's conviction became final.*" (Emphasis added.) *Teague*, 489 U.S. at 301, 109 S.Ct. 1060, 103 L.Ed.2d 334. Sylvain's conviction became final in 2007. But the court in *Sylvain*, while purporting to apply the *Teague* definition of a "new rule," focused on "Massachusetts precedent at the time *Padilla* was decided." *Sylvain* at 435.

{¶14} But the holding in *Padilla*—that the Sixth Amendment imposes upon counsel a duty to accurately advise a noncitizen client concerning the immigration consequences of a plea—cannot be said to have been dictated by Ohio precedent when, in 2006, Bishop's conviction became final. *See State v. Lei*, 10th Dist. Franklin No. 05AP-288, 2006-Ohio-2608, ¶ 32 ("Though the court must inform defendants of deportation consequences prior to accepting a plea of guilty or no contest, pursuant to R.C. 2943.031, no statutory or decisional authority requires trial counsel to advise a defendant of the civil, collateral consequence of deportation for purposes of the defendant's decision as to whether to accept a plea agreement or to exercise her constitutional right to trial"); *accord State v. Sok*, 170 Ohio App.3d 777, 2007-Ohio-729, 869 N.E.2d 60, ¶ 16 (1st Dist.); *State v. Bulgakov*, 6th Dist. Wood No. WD-03-096, 2005-Ohio-1675, ¶ 24; *State v. Garcia*, 3rd Dist. Defiance No. 4-98-24, 1999 Ohio App. LEXIS 1768 (Apr. 9, 1999) (holding that after R.C. 2943.031 was enacted in 1989, the duty to notify defendant of immigration consequences is on the trial court, not counsel). *See also State v. Arvanitis*, 36 Ohio App.3d 213, 218, 522 N.E.2d 1089 (9th Dist.1986) (declaring, before R.C. 2943.031 was enacted, that it was "not disposed to announce a hard and fast rule" that counsel had violated an essential duty in failing to advise a noncitizen client concerning the immigration consequences of a guilty plea). *Compare State v. Hamilton*, 8th Dist. Cuyahoga No. 90141, 2008-Ohio-455, ¶ 18 (following *Sok*, *Bulgakov*, and *Garcia*), *with State v. Creary*, 8th Dist. Cuyahoga No. 82767, 2004-Ohio-858, ¶ 8 (holding that when counsel "was fully aware of [defendant's] interest in deportation consequences, the failure to inform him concerning deportation can be held to fall below professional standards"). Therefore, even if we were to eschew *Chaidez* and adopt the

retroactivity standard applied in *Sylvain*, Bishop would not have been entitled to retroactive application of the rule of *Padilla*.

{¶15} Some state courts have simply applied *Chaidez* to deny retroactive application of *Padilla* in state collateral proceedings. *See Ex parte De Los Reyes*, 392 S.W.3d 675 (Tex.Crim.App.2013) (following *Chaidez* because, as a matter of state habeas practice, the court followed *Teague*, and the petitioner's case provided no reason to deviate from that standard); *Miller v. State*, 77 A.3d 1030, 2013 Md. LEXIS 596 (Md.2013) (following *Chaidez* because the state constitution had not, prior to defendant's conviction, provided an independent state basis for finding counsel deficient for failing to advise a noncitizen client concerning immigration consequences). Other state courts have, like the court in *Sylvain*, applied retroactivity standards formulated by the states' highest courts, but then have determined that *Padilla* is not retroactively applicable under state law. *See State v. Garcia*, 2013 S.D. 46, 834 N.W.2d 821 (2013); *People v. Andrews*, 108 A.D.3d 727, 970 N.Y.S.2d 226 (N.Y. App.Div.2d Dept.2013).

{¶16} Ohio's retroactivity jurisprudence contains no suggestion that the retroactive effect of *Padilla* should be determined under a standard other than that set forth in *Teague*. Before *Teague*, the United States Supreme Court had determined retroactivity based on the factors set forth in *Linkletter v. Walker*, 381 U.S. 618, 636-640, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), and the Ohio Supreme Court adopted and applied the *Linkletter* factors in *Pinch v. Maxwell*, 3 Ohio St.2d 212, 215, 210 N.E.2d 883 (1965). The Ohio Supreme Court has not yet had an opportunity to apply *Teague*. *See Agee*, 92 Ohio St.3d at 542, 2001-Ohio-1279, 751 N.E.2d 1043 (holding that *Teague* was inapposite in determining the retroactive

application of a case construing a state statute).  Thus, the court has had no occasion to consider whether Ohio law would allow retroactive effect where *Teague* would not.  But several Ohio appellate districts have applied *Teague* to determine the retroactive effect of other cases.  *See State v. Tucker*, 8th Dist. Cuyahoga No. 88568, 2007-Ohio-2123; *State v. Bruggeman*, 3rd Dist. Auglaize No. 2-04-26, 2005-Ohio-956; *State v. Shorter*, 2d Dist. Montgomery No. 16983, 1998 Ohio App. LEXIS 4649 (Oct. 2, 1998).  And the Tenth Appellate District in *State v. Spivakov*, 10th Dist. Franklin Nos. 13AP-32 and 13AP-33, 2013-Ohio-3343, with no mention of *Danforth*, followed *Chaidez* to affirm the overruling of the defendant's motion to withdraw his guilty pleas, because his 2006 convictions were final before *Padilla* was decided.

{¶17} ***We reverse.***  We, therefore, follow *Chaidez* to hold that, because Bishop's 2006 conviction was final before *Padilla* was decided, the municipal court abused its discretion in retroactively applying *Padilla* to permit Bishop to withdraw his no-contest plea.  Accordingly, we sustain the assignment of error, reverse the judgment granting Bishop's Crim.R. 32.1 motion, and remand for further proceedings consistent with the law and this opinion.

Judgment reversed and cause remanded.

CUNNINGHAM, P.J., FISCHER and DEWINE, JJ.

Please note:

The court has recorded its own entry on the date of the release of this opinion.