[Cite as *State v. Valdez*, 2017-Ohio-4260.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-160437 |
| | | TRIAL NO. C-10CRB-33213 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| RAMON VALDEZ, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Municipal Court

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  June 14, 2017

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Melynda J. Machol*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*McKinney & Namei Co., LPA, Michael Tudor, Paul W. Shonk* and *Firooz T. Namei,* for Defendant-Appellant.

**MOCK, Presiding Judge**.

{¶1} Defendant-appellant Ramon Valdez appeals from the Hamilton County Municipal Court's judgment overruling his "Emergency Motion to Vacate Guilty Plea under *Padilla v. Kentucky*." We affirm the court's judgment.

{¶2} Valdez was convicted in 2010 upon his guilty plea to the fourth-degree misdemeanor of domestic violence by threat in violation of R.C. 2919.25(C). He took no direct appeal from his conviction. Instead, he sought to withdraw his guilty plea by filing with the municipal court a postconviction motion citing the United States Supreme Court's decision in *Padilla v. Kentucky*, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284 (2010), in support of his claim that his plea had been the unintelligent product of his trial counsel's ineffectiveness in advising him concerning the immigration consequences of his conviction.

{¶3} In this appeal, Valdez presents a single assignment of error, contending that the municipal court abused its discretion in overruling the motion. We overrule the assignment of error, because the record does not demonstrate an abuse of discretion.

### A Crim.R. 32.1 Motion

{¶4} Valdez did not specify in his postconviction motion a statute or rule under which the relief sought might have been afforded, leaving the municipal court to "recast [the motion] into whatever category necessary to identify and establish the criteria by which the motion should be judged." *State v. Schlee*, 117 Ohio St.3d 153, 2008-Ohio-545, 882 N.E.2d 431, ¶ 12 and syllabus. Because Crim.R. 32.1 authorizes the postsentence withdrawal of a guilty plea based on a *Padilla* claim, Valdez's motion was reviewable under the standards provided by that rule. *See State v.*

*Bishop,* 2014-Ohio-173, 7 N.E.3d 605, ¶ 2, 4 (1st Dist.); *State v. Kostyuchenko*, 2014-Ohio-324, 8 N.E.3d 353, ¶ 4, 17 (1st Dist.).  *Accord State v. Bravo*, 9th Dist. Summit No. 27881, 2017-Ohio-272, ¶ 5; *State v. Tovar*, 10th Dist. Franklin No. 11AP-1106, 2012-Ohio-6156, ¶ 6; *State v. Guerrero,* 12th Dist. Butler No. CA2010–09–231, 2011-Ohio-6530, ¶ 3.

{¶5}   Under Crim.R. 32.1, a postsentence motion to withdraw a guilty plea may be granted only "to correct manifest injustice."  *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977), paragraph one of the syllabus.  The defendant bears the burden of proving "manifest injustice."  The determination whether the defendant has sustained that burden is committed to the sound discretion of the trial court and will not be disturbed on appeal unless the court abused its discretion.  *Id.* at paragraph two of the syllabus.

### Manifest Injustice Not Demonstrated

{¶6}   In October 2010, Valdez was indicted for domestic violence in violation of R.C. 2919.25(A), which proscribes "knowingly caus[ing] or attempt[ing] to cause physical harm to a family or household member."  Because he had been convicted of domestic violence in 2003, the charged offense was punishable as a fourth-degree felony, and he was subject to a mandatory minimum term of confinement of six months.  *See* R.C. 2919.25(D)(3) and (D)(6)(a).

{¶7}   In November 2010, Valdez pled guilty to a reduced charge of domestic violence in violation of R.C. 2919.25(C), which provides that "[n]o person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member."  His violation of R.C. 2919.25(C) was punishable as a fourth-degree misdemeanor,

and his sentence was not enhanced by his 2003 domestic-violence conviction. The trial court sentenced him to 30 days in jail and a year of community control, credited him with 16 days of jail time, and suspended the remaining days.

{¶8} Valdez did not challenge his 2010 conviction until 2016, when in his "Emergency Motion to Vacate Guilty Plea under *Padilla v. Kentucky*," he challenged the constitutional competence of his trial counsel in advising him concerning the immigration consequences of that conviction. On the record before us, we cannot say that the court abused its discretion in overruling the motion.

{¶9} ***The Sixth Amendment right to accurate advice concerning deportation.*** The due-process protections afforded by Article I, Section 16 of the Ohio Constitution and the Fourteenth Amendment to the United States Constitution require that a guilty or no-contest plea "represent[] a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970); *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450 (1996). A defendant who seeks to withdraw his plea on the ground that the plea was the unintelligent product of his counsel's ineffectiveness must demonstrate that counsel's representation was constitutionally deficient, *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and that "there is a reasonable probability that, but for [that deficiency, the defendant] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *see State v. Xie*, 62 Ohio St.3d 521, 524, 584 N.E.2d 715 (1992); *State v. Blackwell*, 1st Dist. Hamilton No. C-970150, 1998 WL 212753 (May 1, 1998).

{¶10} For purposes of the Sixth Amendment right to the effective assistance of counsel, a plea negotiation is a critical phase of a criminal prosecution. *Hill* at 57. Eight months before Valdez entered his guilty plea, the United States Supreme Court decided *Padilla*, 559 U.S. 356, 130 S.Ct. 1473, 176 L.Ed.2d 284. Padilla had been convicted upon a guilty plea to drug distribution. Facing deportation for his conviction after being a noncitizen permanent resident of the United States for over 40 years, he sought to withdraw his guilty plea on the ground that his trial counsel had been constitutionally deficient in failing to advise him of the removal consequence of his conviction and in misinforming him that he "did not have to worry about [his] immigration status." *Id.* at 360.

{¶11} The Supreme Court held that the Sixth Amendment imposes upon counsel, in negotiating a guilty or no-contest plea, the duty to "accurate[ly]" advise a noncitizen client concerning the removal consequence of his conviction. *Id.* at 364 and 374. The contours of that duty, the Court declared, depend on "the terms of the relevant immigration statute * * * in defining the removal consequence for [the] conviction." *Id.* at 368. Thus, "[w]hen the law is not succinct and straightforward," counsel "need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, * * * the duty to give correct advice is equally clear." *Id.* at 369.

{¶12} The "relevant immigration statute" in *Padilla* was 8 U.S.C. 1227. The statute sets forth "[c]lasses of deportable aliens" and mandates the removal of any alien who falls within one those classes. 8 U.S.C. 1227(a). Padilla fell into the "Criminal offenses"-"Controlled substances" class of deportable aliens under 8 U.S.C.

1227(a)(2)(B), which provides in relevant part that "[a]ny alien who at any time after admission has been convicted of a violation of (or a conspiracy or attempt to violate) any law or regulation of a State * * * relating to a controlled substance * * *, other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable." 8 U.S.C. 1227(a)(2)(B)(i), quoted in *Padilla* at 368. For purposes of determining Padilla's counsel's duty, the Court found the statute's "terms * * * succinct, clear, and explicit in defining the removal consequence for [his] conviction," when "the text of the statute * * * addresses not some broad classification of crimes but specifically commands removal for all controlled substances convictions except for the most trivial of marijuana possession offenses." *Padilla* at 368-369. The Court concluded that, because Padilla's removal was "presumptively mandatory" and Padilla's counsel "could have easily determined that his plea would make him eligible for deportation simply from reading the text of the * * * removal statute," counsel had performed deficiently in not so advising Padilla and in "incorrect[ly]" assuring him that his conviction would not affect his immigration status. *Id.* Having determined that counsel was constitutionally deficient in advising Padilla concerning the removal consequence of his conviction, the Court remanded the case to the trial court to determine whether Padilla had been thereby prejudiced, that is, whether "a decision to reject the plea bargain would have been rational under the circumstances." *Id.* at 372, 374, citing *Roe v. Flores–Ortega,* 528 U.S. 470, 480, 486, 120 S.Ct. 1029, 145 L.Ed.2d 985 (2000).

{¶13} ***Valdez's counsel's duty.*** Valdez was a noncitizen permanent resident of the United States. He was convicted upon a guilty plea to domestic violence by threat in violation of R.C. 2919.25(C). R.C. 2919.25(C) provides that

"[n]o person, by threat of force, shall knowingly cause a family or household member to believe that the offender will cause imminent physical harm to the family or household member."

{¶14} As in *Padilla*, 8 U.S.C. 1227 is the relevant immigration statute, mandating the removal of an alien who falls within a listed class of "Deportable aliens." 8 U.S.C. 1227(a). Valdez falls within the "Criminal offenses"-"Crimes of domestic violence" class of deportable aliens under 8 U.S.C. 1227(a)(2)(E), which provides in relevant part that an alien is deportable if "at any time after admission [he] is convicted of a crime of domestic violence." 8 U.S.C. 1227(a)(2)(E)(i). For purposes of the crimes-of-domestic-violence class of deportable aliens, a "crime of domestic violence" is defined as "any crime of violence * * * against a person committed by a current * * * spouse of the person." 8 U.S.C. 1227(a)(2)(E)(i). And a "crime of violence" is, in turn, defined under 18 U.S.C. 16(a) as "an offense that has as an element the use, attempted use, or threatened use of physical force against the person * * * of another."

{¶15} 8 U.S.C. 1227(a)(2)(E)(i) defined counsel's duty to advise Valdez of the immigration consequence of his conviction. The text of that statute, like the text of the statute in *Padilla*, is "succinct, clear, and explicit" in classifying as a "deportable alien" one convicted of an offense of domestic violence that includes as an element the threatened use of physical force. *See Padilla*, 559 U.S. at 368-369, 130 S.Ct. 1473, 176 L.Ed.2d 284. *See also United States v. Castleman*, ____ U.S. _____, 134 S.Ct. 1405, 1410-1413, 188 L.Ed.2d 426 (2014) (holding that a state misdemeanor domestic assault categorically qualified as a "misdemeanor crime of domestic violence" under the federal statute making it a felony to possess a firearm after such

a conviction, because the federal statute's "physical force" requirement, under the "well-settled meaning of [that] common-law term[]," is satisfied by the degree of force that supported a common-law battery conviction, namely, an offensive touching). By simply reading the statute, counsel could easily have determined that, with Valdez's conviction for domestic violence in violation of R.C. 2919.25(C), his removal was presumptively mandatory. Therefore, counsel, in advising Valdez concerning his guilty plea, had a duty under *Padilla* to ascertain from the statute, and to accurately advise him, that his conviction mandated his removal. *See Bishop,* 2014-Ohio-173, 7 N.E.3d 605, at ¶ 6-8; *State v. Tapia-Cortez*, 12th Dist. Butler No. CA2016-02-031, 2016-Ohio-8101.

{¶16} ***Valdez's motion to withdraw his guilty plea.*** In his motion to withdraw his guilty plea, Valdez asserted that his domestic-violence-by-threat conviction cast him into 8 U.S.C. 1227(a)(2)(E)(i)'s crimes-of-domestic-violence class of deportable aliens, and that his trial counsel had been constitutionally deficient in advising him concerning the removal consequence of that conviction. Valdez supported the motion with his affidavit, in which he averred that the trial court, before accepting his 2010 plea, had advised him that he "<u>may</u> be deported," and that his trial counsel had "discussed that [that] conviction might have immigration consequences." But he asserted that his counsel had "never explained to [him] that federal law specifically lists 'Crimes of Domestic Violence' as a deportable offense [or] that if [he] was in immigration proceedings, [his] deportation would be mandatory." And he insisted that "no one including [his] lawyer told [him that] as the result of this plea [he] <u>will</u> be deported." He further averred that because there had been no immigration consequences based on his 2003 domestic-violence

conviction, he had "assumed" that there would be none based on his 2010 conviction. And he asserted that because his wife, who was the prosecuting witness in the case, had "told the prosecutor that she did not wish to go forward," he would not have entered his 2010 plea if he had known that he was "signing [his] own deportation order."

{¶17} The municipal court conducted a hearing on Valdez's motion to withdraw his 2010 guilty plea and on his separate motion to withdraw his 2003 plea. Because neither the trial court nor counsel had advised Valdez concerning the removal consequence of his 2003 conviction, the court granted withdrawal of that plea. With respect to the 2010 conviction, the court took no evidence, but entertained arguments, and based on those arguments, overruled Valdez's motion to withdraw his 2010 plea. On the record before us, we cannot say that the court, in overruling the motion, abused its discretion.

{¶18} *No transcript of the plea hearing.* On his motion, Valdez bore the burden of demonstrating that his counsel had been constitutionally deficient in advising him concerning the removal consequence of his conviction, and that this deficiency in counsel's performance had prejudiced him, that is, that "a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at 374, 130 S.Ct. 1473, 176 L.Ed.2d 284. The prejudice prong of the *Padilla* analysis thus required an inquiry into the "circumstances" surrounding Valdez's decision to plead. Those circumstances necessarily included the matters that had transpired at the hearing where his plea was entered and accepted.

{¶19} But the municipal court, in deciding Valdez's motion to withdraw his plea, did not have a complete record of the "circumstances" surrounding his decision

to plead, because a transcript of the proceedings at his plea hearing was not before the court. An indigent offender is entitled to a transcript of the proceedings leading to his conviction, at the state's expense, if he has pending either a direct appeal or a postconviction proceeding. *State ex rel. Partee v. McMahon*, 175 Ohio St. 243, 248, 193 N.E.2d 266 (1963); *State v. Hawkins*, 1st Dist. Hamilton No. C-74425, 1975 WL 181869 (July 7, 1975). Valdez did not appeal his conviction. Nor did he request that a transcript of the plea hearing be filed with the municipal court for its decision on his postconviction motion to withdraw his plea.

{¶20} The Ohio Supreme Court has declared, as "a bedrock principle of appellate practice in Ohio[,] * * * that an appeals court is limited to the record of the proceedings [before the court below]." *Morgan v. Eads*, 104 Ohio St.3d 142, 2004-Ohio-6110, 818 N.E.2d 1157, ¶ 13. And the "appellant bears the burden of showing error by reference to matters on the record." *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980). Valdez's challenge in his Crim.R. 32.1 motion to the knowing and intelligent nature of his guilty plea depended for its resolution upon matters adduced at his plea hearing. But Valdez did not file a transcript of the plea hearing until after he had appealed the municipal court's judgment overruling his motion. We decline to consider that transcript, because we may not add to the record and then decide this appeal based on matter that was not before the municipal court in ruling on the motion. *See State v. Ishmail*, 54 Ohio St.2d 402, 405-406, 377 N.E.2d 500 (1978), paragraph two of the syllabus (holding that when a trial court denies a postconviction petition seeking to withdraw guilty pleas without first considering a plea-hearing transcript, the appeals court cannot add that transcript to the record before it and then decide the appeal on the basis of

matter disclosed by the transcript). *Accord State v. Tekulve*, 188 Ohio App.3d 792, 2010-Ohio-3604, 936 N.E.2d 1030 (1st Dist.2010) (following *Ishmail* in declining to consider a plea-hearing transcript attached to appellant's brief that was not before the municipal court in deciding appellant's Crim.R. 32.1 motion). *See also Metzcar v. Metzcar*, 1st Dist. Hamilton No. C-850801, 1986 WL 12741, *1 (Nov. 12, 1986) (following *Ishmail* in declining to consider a transcript of proceedings before a domestic-relations magistrate that had been filed with the court of appeals, but had not yet been prepared when the domestic-relations court overruled objections and adopted the magistrate's report).

## We Affirm

{¶21} The municipal court's decision overruling Valdez's Crim.R. 32.1 motion to withdraw his guilty plea was discretionary. And Valdez bore the burden of proving a prejudicial deficiency in his trial counsel's performance that made the withdrawal of his guilty plea necessary "to correct manifest injustice." Thus, implicit in the court's decision overruling Valdez's motion was its determination that he had failed to sustain that burden. That determination, in the absence of a transcript of the proceedings at the plea hearing, cannot be said to have been arbitrary, unconscionable, or the product of an unsound reasoning process. *See State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34 (defining an "abuse of discretion"). We, therefore, hold that the municipal court did not abuse its discretion in overruling, or in declining to conduct an evidentiary hearing on, Valdez's Crim.R. 32.1 motion.

{¶22} Accordingly, we overrule the assignment of error and affirm the court's judgment.

**Judgment affirmed.**

**CUNNINGHAM, J.**, concurs.
**ZAYAS, J.**, dissents.

**ZAYAS, J.**, dissenting.

{¶23} I concur with the majority's analysis that Valdez's counsel had a duty to accurately advise Valdez that, as a noncitizen, permanent resident, he would be subject to removal or deportation after being convicted of domestic violence. I respectfully dissent from the majority's conclusion that the trial court's determination cannot be considered an abuse of discretion without a transcript from the plea hearing.

### *Test to Establish Ineffective Assistance of Counsel*

{¶24} To establish a claim of ineffective assistance of counsel, defendant must satisfy a two-prong test. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052, 80 L.Ed.2d 674. Defendant must show that (1) that defense counsel's performance was so deficient that he was not functioning as the counsel guaranteed under the Sixth Amendment to the United States Constitution, and (2) that defense counsel's errors prejudiced defendant. *Id.* The failure to make either showing defeats a claim of ineffectiveness of trial counsel. *Id.* at 697. Defendants have a Sixth Amendment right to the effective assistance of counsel when deciding whether to enter a guilty plea. *Padilla*, 559 U.S. at 364, 130 S.Ct. 1473, 176 L.Ed.2d 284; *Strickland* at 686; *McMann v. Richardson*, 397 U.S. 759, 771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970), fn. 14.

### *Valdez's Motion to Withdraw his Guilty Plea*

{¶25} Valdez filed an "Emergency Motion to Vacate Guilty Plea" on March 3, 2016. The state did not file a response. The trial court held a hearing on defendant's

motion on March 29, 2016. Valdez admitted that the court properly advised him under R.C. 2943.031(A) that he may be subject to deportation by pleading guilty. However, Valdez argued his counsel was constitutionally obligated to advise him that a plea to a domestic-violence charge subjected him to removal under federal law and that trial counsel's failure to provide this advice constituted a deficient performance. *See* 8 U.S.C. 1227(a)(2)(E)(i). The state argued that federal law did not clearly require mandatory removal for a domestic-violence conviction at the time Valdez committed his offense.

{¶26} The trial court denied the motion. In doing so, the trial court determined that both trial counsel and the trial court had advised Valdez that he "may" be deported due to his domestic-violence conviction. The court determined that such advisement was sufficient, rationalizing that trial counsel need not advise the defendant over and above the trial court's admonishments regarding immigration consequences pursuant to R.C. 2943.031 and that requiring counsel to do so would be "duplicative."

### Deportation Versus Removal

{¶27} Before beginning the *Padilla* analysis, it is necessary to clarify the meaning of the terms deportation and removal. As Ohio case law has developed in applying *Padilla*, these terms have been used interchangeably. *See, e.g., State v. Preciado*, 8th Dist. Cuyahoga No. 101257, 2015-Ohio-19, ¶ 24 (referring to a "deportation-removal hearing").

{¶28} A commonly accepted meaning of "deportation" is "the removal from a country of an alien whose presence in the country is unlawful or is held to be prejudicial to the public welfare.'" *State v. Encarnacion*, 12th Dist. Butler No.

CA2003-09-225, 2004-Ohio-7043, ¶ 24, citing *Webster's Third New International Dictionary* (1981). Under current federal law, an "alien" is defined as "any person not a citizen or national of the United States." 8 U.S.C. 1101(a)(3).

{¶29} In 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). *See U.S. v. Pantin*, 155 F.3d 91, 92 (2d Cir.1998). Prior to IIRIRA's passage, federal law used two proceedings to expel an alien from the United States: "exclusion" and "deportation" proceedings. *Id.* Generally speaking, "exclusion proceedings" determined whether an alien seeking entry would be allowed to enter or should be expelled, while "deportation proceedings" were concerned with aliens who had already entered the United States and could be expelled. *Mejia-Ruiz v. INS*, 51 F.3d 358, 360 (2d Cir.1995), fn. 1 (citing 8 U.S.C. 1226(a) and 1251). Entry was defined as "any coming of an alien into the United States, from a foreign port or place * * *." Former 8 U.S.C. 1101(a)(13). The IIRIRA replaced exclusion and deportation proceedings with removal proceedings. *Pantin* at 92.

{¶30} 8 U.S.C. 1227 is designated "deportable aliens" and is the statute that currently defines classes of aliens who are subject to removal proceedings. Accordingly, if aliens fall under one of this statute's categories of deportable aliens, they are subject to being removed from the United States.

{¶31} Notwithstanding the fact that there are no "deportation proceedings" post IIRIRA, the terms deportation and removal continue to be used interchangeably. *See Pantin* at 92-93 (concluding the terms "deportation" and "removal" have the same meaning under the IIRIRA). *See also U.S. v. Pena-Renovato*, 168 F.3d 163, 164 (5th Cir.1999) (finding no distinction between

"removal" and deportation" under the IIRIRA). The continued use of the term "deportable alien" within federal law post IIRARA may create the faulty perception that both deportation and removal proceedings currently exist under federal law. Moreover, the concept of "being deported" tends to be commonly understood for it has existed for many years, while the concept of "being removed" pursuant to removal proceedings began in 1996. *See* Alien Act of 1798, 1 Stat. 570 (empowering the President to order the deportation of any alien deemed dangerous); *Pantin* at 92-93.

{¶32} Accordingly, I will use the term "removal" as synonymous with the term "deportation" within this dissent.

### *Valdez's Counsel's Duty*

{¶33} The core of Valdez's argument is that, having received inaccurate advice regarding the immigration consequences of his plea, he could not make an informed decision about whether to accept a plea offer or proceed to trial.

{¶34} Pursuant to *Padilla*, the analysis of whether trial counsel was deficient hinges on whether the deportation consequence of defendant's guilty plea was truly clear.

{¶35} Valdez sought to withdraw his plea because his trial counsel, by merely stating that he "*may* be deported," did not accurately inform him of the immigration consequences of his conviction. Valdez admitted that the trial court properly advised him as required by R.C. 2943.031. Thus the sole issue was whether trial counsel was constitutionally obligated to provide any additional advice.

{¶36} The state argued that defense counsel had no obligation to provide any additional advice because the law was not succinct and straightforward at the time of

the plea. The state claimed that a conviction for domestic violence resulted in a possibility of deportation and that Valdez's deportation was not certain at the time he entered his plea. Therefore, compliance with R.C. 2943.031(A) in and of itself prevented Valdez from proving that his counsel was ineffective and that he was prejudiced by counsel's performance.

{¶37} Ultimately, the trial court found that Valdez's counsel had no obligation to provide any additional warning above and beyond the court's statutory admonition. The court explained that any additional advice "above what the Court said of the potential deportation upon that conviction is duplicative." Thus, the trial court concluded Valdez's counsel was not ineffective because he had no duty to advise Valdez that deportation was mandatory.

{¶38} Consequently, the issue presented to this court is whether *Padilla* required counsel to specifically advise Valdez that a domestic-violence conviction subjected him to removal or deportation instead of the general advisement that the conviction "may" result in removal or deportation.

{¶39} As the majority correctly concluded, counsel had a duty under *Padilla* to ascertain the immigration consequences from the statute, and accurately advise him. Defense counsel was constitutionally obligated to advise Valdez that his guilty plea would result in him being subject to deportation or removal because as a noncitizen, permanent resident, the immigration consequence of his guilty plea to domestic violence was truly clear. *See Bishop*, 2014-Ohio-173, 7 N.E.3d 605, at ¶ 8 (explaining that under federal immigration law anyone convicted of domestic violence is subject to removal).

{¶40} Accordingly, being subject to removal proceedings is a mandatory and clear consequence of the domestic-violence conviction. Therefore, Valdez's counsel was constitutionally deficient, and Valdez has satisfied the first *Strickland* prong.

### *Manifest Injustice Can Be Established on Facts Supplied through Affidavits Attached to the Motion*

{¶41} Manifest injustice can be established on the specific facts on the record or facts supplied through affidavits attached to the motion. *State v. Garcia,* 10th Dist. Franklin No. 08AP-224, 2008-Ohio-6421, ¶ 11, citing *State v. Gegia*, 157 Ohio App.3d 112, 2004-Ohio-2124, 809 N.E.2d 673 (9th Dist.). A hearing on the motion must only be held if the facts alleged by the defendant, and accepted as true by the trial court, "would support a finding of manifest injustice." *Garcia* at ¶ 11.

{¶42} A trial court has discretion to determine the credibility of an affidavit and whether to accept the factual statements as true. *See Smith*, 49 Ohio St.2d at 264, 361 N.E.2d 1324. *See also State v. Ayesta*, 8th Dist. Cuyahoga No. 101383, 2015-Ohio-1695, ¶ 10, citing *State v. Knowles*, 8th Dist. Cuyahoga No. 95239, 2011-Ohio-1685, ¶ 22, citing *State v. Mays*, 174 Ohio App.3d 681, 2008-Ohio-128, 884 N.E.2d 607, ¶ 14 (8th Dist.). By definition, an affidavit is a sworn statement that the affiant makes under penalty of perjury and "should not lightly be deemed false." *State v. Calhoun*, 86 Ohio St.3d 279, 284, 714 N.E.2d 905 (1999).

{¶43} Here, the trial court did not raise any concerns regarding the truth of Valdez's averments and relied on the averments in reaching its decision. The court found that the trial court complied with R.C. 2943.031, and Valdez's counsel was not required to provide any further advice regarding the immigration consequences.

{¶44} Additionally, both parties had the transcript of the plea hearing. Valdez cited to the transcript in his motion, and the state confirmed that the court

complied with R.C. 2943.031 by referencing the transcript. The state did not point out any discrepancies between the averments and statements made at the plea hearing based on its transcript. Moreover, the state also accepted those averments as true and relied on them in making its arguments.

{¶45} Because the court and the state accepted the affidavit as true and the court relied on those facts in denying the motion, I disagree that the transcript of the plea hearing is necessary to determine whether the court abused its discretion.

### *Was Prejudice Established?*

{¶46} The next question is whether Valdez established that he was prejudiced by his counsel's deficient performance. To prove prejudice, Valdez must "convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Padilla*, 559 U.S. at 372, 130 S.Ct. 1473, 176 L.E.2d 284. The court must "focus[] on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59, 106 S.Ct. 366, 88 L.Ed.2d 203. In other words, the inquiry is whether a decision to reject the plea would have been rational had the defendant been correctly informed that the plea would render him deportable.

{¶47} However, the Ohio Supreme Court has recognized that a court need not analyze both prongs of the *Strickland* test, where the issue may be disposed upon consideration of one of the factors. *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989), citing *Strickland*, 466 U.S. at 697, 104 S.Ct. 2052, 80 L.Ed.2d 674. If the defendant makes an insufficient showing on one prong, the other prong need not be addressed. *Id.*

{¶48} The trial court's decision denying the motion simply stated that:

[T]he [R.C. 2943.031] admonishment is clear that if you're facing a jailable offense, and are not a citizen of the United States, that the consequence of being found guilty of that charge, you may be deported or your ability to become a naturalized citizen may be otherwise hampered or obstructed. The defense argument that the lawyer failed to further advise the defendant above what the Court said of the potential deportation upon that conviction is duplicative. And the Court disagrees with the defense position that it would have had any— that it was necessary. The defendant was advised of the consequences of the plea. He entered the plea knowing the potential consequences * * *.

{¶49} The court denied the motion because it found that Valdez was informed of the plea's consequences. The trial court did not specifically address the prejudice prong after determining Valdez's trial counsel was not deficient.

{¶50} The majority concludes that "implicit in the court's decision overruling Valdez's motion was its determination that he had failed to sustain that burden." However, the court was not required to make a prejudice determination once it found Valdez failed to show his counsel was ineffective. *Id.* And the record does not support a conclusion that the court determined that Valdez failed to prove prejudice.

{¶51} Valdez averred that he would not have entered a guilty plea if counsel had correctly advised him of the consequences of the plea, and that his wife had told the prosecutor she did not want to proceed with prosecution. However, during the hearing, neither party discussed whether it would be rational for Valdez to reject the

plea. Additionally, the trial court's decision contains no findings regarding Valdez's potential defenses or the rationality of rejecting the plea.

{¶52} When the trial court makes no factual findings regarding prejudice, and instead denies the motion solely on the basis that the R.C. 2943.031 advisement was sufficient, the case should be remanded to allow the parties to make a record regarding the rationality of rejecting the plea. *See State v. Galdamez*, 2015-Ohio-3681, 41 N.E.3d 467, ¶ 44-45 (10th Dist.). *See also Padilla*, 559 U.S. at 374-375, 130 S.Ct. 1473, 176 L.Ed.2d 284 (remanding the case to the Kentucky court to determine whether Padilla met the *Strickland* prejudice prong because the trial court did not address the issue). Since the trial court did not rule on the issue of prejudice, this court should not address the merits for the first time on appeal and should remand the case to the trial court for consideration. *Mills-Jennings of Ohio, Inc. v. Liquor Control Comm.*, 16 Ohio App.3d 290, 293-294, 475 N.E.2d 1321 (10th Dist.1984); *United Auto Workers, Local Union 1112 v. Philomena*, 121 Ohio App.3d 760, 791-792, 700 N.E.2d 936 (10th Dist.1998).

### *Conclusion*

{¶53} Accordingly, I would find that the trial court abused its discretion in denying the motion because Valdez's counsel affirmatively misadvised him of the immigration consequence of his plea. Additionally, I would remand the case to the trial court to conduct a hearing to determine whether Valdez was prejudiced by his counsel's deficient performance.

Please note:

The court has recorded its own entry on the date of the release of this opinion.