[Cite as *State v. Hinkle*, 2024-Ohio-5499.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| TREVOR J. HINKLE | : | Case No. CT2024-0079 |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:        Appeal from the Court of Common Pleas, Case Nos. CR2021-0255 & CR2021-0257


JUDGMENT:        Affirmed


DATE OF JUDGMENT:        November 20, 2024


APPEARANCES:

For Plaintiff-Appellee

JOSEPH A. PALMER
27 North Fifth Street
Zanesville, OH  43702

For Defendant-Appellant

TREVOR J. HINKLE, PRO SE
#799-097
Belmont Correctional Institution
P.O. Box 540
St. Clairsville, OH  43950

*King, J.*

{¶ 1}   Defendant-Appellant Trevor Hinkle appeals the June 11, 2024 judgment of the Muskingum County Court of Common Pleas which denied Hinkle's pro se motion to withdraw his July 19, 2021 guilty plea. Plaintiff-Appellee is the State of Ohio. We affirm the trial court.

FACTS AND PROCEDURAL HISTORY

{¶ 2}   This case involves two related trial court case numbers. On May 13, 2021, the Muskingum County Grand Jury returned an indictment in case number CR2021-0257, charging Hinkle with one count each of possession of a fentanyl-related compound with a forfeiture specification, a felony of the fifth degree, corrupting another with drugs, a felony of the second degree, and involuntary manslaughter, a felony of the first degree. On May 18, 2021, in case number CR2021-0255, the Muskingum County Grand Jury returned an indictment charging Hinkle with one count each of corrupting another with drugs, a felony of the second degree, involuntary manslaughter, a felony of the first degree, and trafficking in a fentanyl-related compound, a felony of the fifth degree.

{¶ 3}   Following plea negotiations with the state, on July 19, 2021 Hinkle entered guilty pleas in both cases. In case number CR2021-0255 Hinkle entered pleas of guilty to corrupting another with drugs and involuntary manslaughter. In exchange, the State agreed to dismiss the remaining counts of the indictment and to make no recommendation at sentencing. In case number CR2021-0257, Hinkle entered pleas of guilty to corrupting another with drugs and involuntary manslaughter. In exchange, the state agreed to dismiss the remaining counts of the indictment and to make no recommendation at sentencing. Counsel for Hinkle indicated he had reviewed the plea

forms with Hinkle and that Hinkle had signed the forms in front of counsel indicating his understanding of the plea agreement. Transcript of plea hearing (T.) 3-6

{¶ 4}  Before accepting his pleas, the trial court engaged Hinkle in a Crim.R. 11 plea colloquy wherein Hinkle indicated he understood the rights he waived by entering his pleas, the nature of the charges, potential defenses and penalties, understood the plea negotiations, and was satisfied with his counsel's representation. The State then recited the facts of the cases. In case number CR2021-0255 Hinkle provided fentanyl to L.C., who subsequently died of an overdose. In case number CR2021-0257 Hinkle provided fentanyl to L.W., who subsequently died of an overdose. Hinkle stipulated to the facts as recited by the State. The trial court accepted Hinkle's pleas, ordered a presentence investigation, and set the matter over for sentencing. Transcript of plea hearing (T.) 6-19.

{¶ 5}  Hinkle appeared for sentencing on May 2, 2022 and was sentenced to an aggregate indefinite sentence of 8 to 12 years.

{¶ 6}  Hinkle did not appeal or otherwise challenge his conviction. Instead, on May 13, 2024, more than two years after his sentencing, Hinkle filed a motion to withdraw his guilty pleas. Hinkle claimed the postmortem toxicology reports of L.C. and L.W. demonstrated they did not die of a fentanyl overdose because the reports indicated the victims had ingested a mixture of drugs. He further claimed his counsel rendered ineffective assistance by intentionally concealing this evidence and conspiring with the State to do so. The state filed a response arguing Hinkle's motion was moot because his arguments were barred by res judicata. The trial court denied the motion without a hearing. Its judgment entry stated in its entirety:

This matter comes before the Court on the defendant's motion for withdrawal of plea of guilty. Upon review of the motion and the State of Ohio's opposition the motion is hereby denied.

{¶ 7} Hinkle filed an appeal and the matter is now before this court for consideration. He raises 14 assignments of error as follow:

I

{¶ 8} "THE TRIAL COURT ABUSED ITS DISCRETION AND ERRED AS A MATTER OF LAW IN DENYING THE APPELLANT'S MOTION TO WITHDRAW HIS GUILTY PLEAS WHERE: A. THE TRIAL COURT FAILED TO PROPERLY CONSIDER THE TOXICOLOGY REPORT AND SWORN AFFIDAVIT ATTACHED TO THE MOTION TO WITHDRAW; B. WHEN IT CONCLUDED THAT RES JUDICATA BARRED THE MOTION."

II

{¶ 9} "THE TRIAL COURT ERRED WHEN IT ADOPTED THE STATE'S PROPOSED FINDINGS OF FACTS AND CONCLUSION OF LAW."

III

{¶ 10} "THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR BY FAILING TO HOLD A HEARING ON HIS POST-SENTENCE MOTION TO WITHDRAW HIS GUILTY PLEA."

IV

{¶ 11} "THE TRIAL COURT COMMITTED PLAIN ERROR AND ABUSED ITS DISCRETION BY DENYING THE APPELLANT'S MOTION FOR DISCLOSURE OF

EXCULPATORY EVIDENCE AND REFUSING TO ORDER THE PROSECUTION TO PROVIDE THE DEATH CERTIFICATES OF BOTH VICTIMS, IN VIOLATION OF APPELLANT'S 4TH, 5TH, 6TH, & 14TH U.S. CONSTITUTIONAL AMENDMENTS AND ARTICLE I, SEC.S 10, 14 & 16 OF THE OHIO CONSTITUTION."

V

{¶ 12} "DEFENDANT'S GUILTY PLEA WAS NOT KNOWINGLY, VOLUNTARILY, OR INTELLIGENTLY GIVEN DUE TO TRIAL COUNSEL'S INEFFECTIVENESS WHERE COUNSEL FAILED TO OBTAIN AND/OR DISCLOSE TO DEFENDANT, PRIOR TO ADVISING DEFENDANT TO PLEAD GUILTY AND PRIOR TO ENTERING THE GUILTY PLEA, THE POTENTIALLY EXCULPATORY EVIDENCE OF THE CORONER'S DEATH CERTIFICATE REPORT PROVIDING THE CAUSE OF DEATH OF BOTH LARRY COMPTON AND LAIKYN WISECARVER. THUS, DUE TO THE MIXTURE OF DRUGS FOUND IN THE DECEASED TOXICOLOGY REPORT, THE CAUSE OF DEATH CANNOT BE LEGALLY LISTED AS FENTANYL OVERDOSE."

VI

{¶ 13} "APPELLANT'S GUILTY PLEA WAS NOT KNOWINGLY, VOLUNTARILY, OR INTELLIGENTLY GIVEN DUE TO PROSECUTOR MISCONDUCT WHERE THE PROSECUTOR MISREPRESENTED THE FACTS AND EVIDENCE DURING THE PLEA NEGOTIATION PROCESS, AND DURING THE PLEA AND SENTENCING HEARING."

VII

{¶ 14} "APPELLANT'S GUILTY PLEA WAS NOT KNOWINGLY, VOLUNTARILY, OR INTELLIGENTLY GIVEN DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL AND

PROSECUTOR MISCONDUCT NO BRADY VIOLATION WHERE COUNSEL CONSPIRED WITH THE PROSECUTOR TO WITHHOLD AND PREVENT APPELLANT FROM REVIEWING THE TOXICOLOGY REPORT AND THE CORONER DEATH CERTIFICATE REPORT LISTING THE CAUSE OF DEATH OF LARRY COMPTON AND LAIKYN WISECARVER, PRIOR TO ADVISING HIM TO PLEAD GUILTY, AND PRIOR TO ENTERING THE GUILTY PLEA."

## VIII

{¶ 15} "DEFENDANT'S GUILTY PLEA WAS NOT KNOWINGLY, VOLUNTARILY OR INTELLIGENTLY GIVEN DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL WHERE COUNSEL FAILED TO DISCLOSE TO DEFENDANT THE TOXICOLOGY REPORT PRIOR TO ADVISING HIM TO PLEAD GUILTY, AND PRIOR TO ENTERING THE GUILTY PLEA.

## IX

{¶ 16} "APPELLANT'S GUILTY PLEA WAS NOT KNOWINGLY, VOLUNTARILY, OR INTELLIGENTLY GIVEN DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL WHERE COUNSEL FAILED TO ADEQUATELY INVESTIGATE THE FACTS OF THE CASE, FAILED TO CONSULT OR OBTAIN EXPERT WITNESS WHO COULD HAVE CHALLENGED THE EVIDENCE CONDUCT RESEARCH, AND ADVISE ON POSSIBLE THEORIES OF APPLICABLE LEGAL DEFENSES TO THE CHARGES, BEFORE ADVISING HIM TO PLEAD GUILTY, PARTICULARLY THE AVAILABLE DEFENSE OF THE PREDICATE OFFENSE OF INVOLUNTARY MANSLAUGHTER OR CORRUPTING ANOTHER WITH DRUGS."

## X

{¶ 17} "DEFENDANT'S GUILTY PLEA WAS NOT KNOWINGLY, VOLUNTARILY, OR INTELLIGENTLY GIVEN DUE TO INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHERE COUNSEL FAILED TO ADVISE DEFENDANT OF THE NATURE OF THE CHARGE AGAINST HIM."

XI

{¶ 18} "APPELLANT'S GUILTY PLEA WAS NOT KNOWINGLY, VOLUNTARILY, OR INTELLIGENTLY GIVEN DUE TO INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL WHERE COUNSEL ADVISED HIM TO PLEAD GUILTY TO INVOLUNTARY MANSLAUGHTER AND CORRUPTING ANOTHER WITH DRUGS WHEN THERE WAS INSUFFICIENT EVIDENCE THAT DEFENDANT'S ALLEGED CONDUCT OF SUPPLYING FENTANYL WAS THE ACTUAL OR LEGAL CAUSE OF THE DECEDENT'S DEATH."

XII

{¶ 19} "APPELLANT'S GUILTY PLEA WAS NOT KNOWINGLY, VOLUNTARILY, OR INTELLIGENTLY GIVEN DUE TO INEFFECTIVE ASSISTANCE OF COUNSEL WHERE COUNSEL PROVIDED FALSE AND INADEQUATE LEGAL ADVICE PRIOR TO ENTERING THE GUILTY PLEA."

XIII

{¶ 20} "THE TRIAL COURT ERRED AND THEREBY DEPRIVED APPELLANT OF DUE PROCESS OF LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND COMPARABLE PROVISIONS OF THE OHIO CONSTITUTION BY DENYING APPELLANT'S MOTION TO WITHDRAW HIS GUILTY PLEA AND FINDING NO MANIFEST INJUSTICE WHERE EVIDENCE WAS

PRESENTED THAT THE STATE WITHHELD AND CONCEALED EXCULPATORY BRADY MATERIAL."

XIV

{¶ 21} "DEFENDANT'S GUILTY PLEA WAS NOT KNOWINGLY, VOLUNTARILY, OR INTELLIGENTLY GIVEN DUE PROSECUTOR MISCONDUCT WHERE THE PROSECUTOR COMMITTED A BRADY VIOLATION BY INTENTIONALLY CONCEALED EVIDENCE OF THE DEATH CERTIFICATES OF BOTH VICTIMS THAT WILL PROVE THAT THE DEATH OF DECEDENTS WAS NOT DUE TO FENTANYL, THEREBY PROVIDING EVIDENCE OF DEFENDANT'S INNOCENCE."

I, II, III, IV, XIII

{¶ 22} Hinkle's assignments of error are repetitive. For ease of discussion we will address assignments together as well as out of order. We first address Hinkle's complaints directed at the trial court, specifically assignments of error one through four and thirteen.

{¶ 23} In these assignments of error, Hinkle argues the trial court erred or abused its discretion when it 1.) denied his motion to withdraw his guilty pleas without a hearing; 2.) adopted the State's proposed findings of fact and conclusions of law; 3.) denied his motion for disclosure of exculpatory evidence by refusing to order the State to provide death certificates of both victims; 4.) concluded Hinkle's motion was barred by res judicata, and 5.) denied his motion to withdraw his pleas where evidence was presented to demonstrate the State committed a *Brady* violation.

Applicable Law

Guilty Pleas Generally

{¶ 24} The entry of a guilty plea is a grave decision by an accused to dispense with a trial and allow the state to obtain a conviction without following the otherwise difficult process of proving his guilt beyond a reasonable doubt. See *Machibroda v. United States*, 368 U.S. 487 (1962). A plea of guilty constitutes a complete admission of guilt. Crim.R. 11(B)(1). "By entering a plea of guilty, the accused is not simply stating that he did the discreet acts described in the indictment; he is admitting guilt of a substantive crime." *United States v. Broce*, 488 U.S. 563, 570 (1989).

{¶ 25} Guilty pleas must be made knowingly, intelligently and voluntarily. Crim.R. 11. Literal compliance with Crim. R. 11 is preferred, however, the trial court need only "substantially comply" with the rule when dealing with the non-constitutional elements of Crim.R. 11(C). *State v. Ballard*, 66 Ohio St.2d 473, 475 (1981), citing *State v. Stewart*, 51 Ohio St.2d 86 (1977). In *State v. Griggs*, 2004-Ohio-4415, the Ohio Supreme Court noted the following test for determining substantial compliance with Crim.R. 11:

> The right to be informed that a guilty plea is a complete admission of guilt is nonconstitutional and therefore is subject to review under a standard of substantial compliance. *State v. Nero*, 56 Ohio St.3d at 107, 564 N.E.2d 474. Though failure to adequately inform a defendant of his constitutional rights would invalidate a guilty plea under a presumption that it was entered involuntarily and unknowingly, failure to comply with nonconstitutional rights will not invalidate a plea unless the defendant thereby suffered prejudice. *Id.*

at 108, 564 N.E.2d 474. The test for prejudice is "whether the plea would have otherwise been made." *Id.* Under the substantial-compliance standard, we review the totality of circumstances surrounding Griggs's plea and determine whether he subjectively understood that a guilty plea is a complete admission of guilt. *Id.*

{¶ 26} *Griggs* at ¶ 12.

### Withdrawal of a Guilty Plea

{¶ 27} Crim.R. 32.1 governs the withdrawal of a guilty or no-contest plea. The rule states:

A motion to withdraw a plea of guilty or no-contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea.

{¶ 28} A defendant seeking to withdraw a post-sentence plea "bears the burden of establishing manifest injustice based on specific facts contained in the record or supplied through affidavits attached to the motion." *State v. Walsh*, 2015-Ohio-4135, ¶16 (5th Dist.), citing *State v. Graham*, 2013-Ohio-600 (5th Dist.). "A 'manifest injustice' comprehends a fundamental flaw in the path of justice so extraordinary that the defendant could not have sought redress from the resulting prejudice through another form of application reasonably available to him or her." *State v. Hartzell*, 1999 WL 957746, *2 (2d

Dist. Aug. 20, 1999). Under the manifest injustice standard, a post-sentence motion to withdrawal is allowable only in extraordinary cases. *State v. Aleshire*, 2010-Ohio-2566, ¶60 (5th Dist.), citing *State v. Smith*, 49 Ohio St.2d 261 (1977).

{¶ 29} Hinkle's request to withdraw his plea was made more than two years after he was sentenced. He was therefore required to demonstrate a manifest injustice. *State v. Smith,* 49 Ohio St.2d 261 (1977), paragraph one of the syllabus; *State v. Aleshire*, 2010-Ohio-2566, ¶ 60 (5th Dist.).

{¶ 30}  A defendant must support the allegations made in a motion to withdraw a plea with affidavits and/or the record. *State v. Hutchinson*, 2018-Ohio-200, 104 N.E.3d 91, ¶43 (5th Dist.). A defendant is "not entitled to a hearing where he or she failed to provide evidentiary-quality materials raising sufficient operative facts which would entitle the defendant to the requested relief." *Id.* A defendant must present evidence which meets a minimum level of cogency to support his or her motion. *Id.* Moreover, self-serving affidavits are generally insufficient to demonstrate manifest injustice. *State v. Passafiume*, 2018-Ohio-1083, ¶ 26 (8th Dist.). A record which reflects compliance with CrimR. 11 has more probative value than appellant's self-serving affidavit provided to demonstrate a manifest injustice because of the presumption that appellant knowingly, intentionally, and voluntarily entered his guilty pleas. *Id.*

Res Judicata as Applied to Crim.R. 32.1 Motions

{¶ 31}  The failure to appeal a judgment of conviction bars as res judicata any subsequent attempt to litigate issues that could have been raised in a direct appeal. *State v. Dick*, 2000-Ohio-1685 (3d Dist.), citing *State v. Harmon*, 103 Ohio App.3d 595, 598, (1st Dist. 1995.)

{¶ 32} In *State v. Ketterer*, 2010-Ohio-3831, appellant Ketterer appealed the denial of his motion to withdraw his guilty pleas which was based on issues raised after his direct appeal. The Supreme Court of Ohio noted res judicata may apply to a motion to withdraw a guilty plea:

> Res judicata bars the assertion of claims against a valid, final judgment of conviction that have been raised or could have been raised on appeal. *State v. Perry* (1967), 10 Ohio St.2d 175, 39 O.O.2d 189, 226 N.E.2d 104, paragraph nine of the syllabus. Ohio courts of appeals have applied res judicata to bar the assertion of claims in a motion to withdraw a guilty plea that were *or could have been* raised at trial or on appeal. See *State v. McGee*, 8th Dist. Cuyahoga No. 91638, 2009-Ohio-3374, ¶ 9; *State v. Totten*, 10th Dist. Franklin No. 05AP–278 and 05AP-508, 2005-Ohio-6210, ¶ 7.

{¶ 33} *Ketterer* ¶ 59, emphasis added. The Court went on to conclude:

> In Ketterer's first appeal, this court considered most of the claims that Ketterer raised on remand as a basis to withdraw his guilty pleas. We found that Ketterer was adequately informed of his rights before pleading guilty; that his plea was knowingly, voluntarily, and intelligently made; and that his counsel was not ineffective in providing him advice on his guilty pleas. *State v. Ketterer*, 111 Ohio

St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 13-14, 75-79, and 80-

90. Thus, res judicata was a valid basis for rejecting these claims.

{¶ 34} *Id.* ¶ 60.

Hinkle's Arguments

{¶ 35} Turning to Hinkle's arguments, we first note that upon our review of the transcript of the change-of-plea hearing, the trial court properly complied with the requirements of Crim.R. 11, and Hinkle does not argue otherwise. Instead, Hinkle's motion to withdraw his guilty pleas centered on the toxicology reports for the victims which were provided to Hinkle's trial counsel in discovery. Hinkle attached the reports to his motion to withdraw his plea along with his own self-serving affidavit. He speculated that the toxicology reports proved the victims did not die of a fentanyl overdose because the reports indicate the victims had ingested other drugs in addition to fentanyl.

{¶ 36} First, we have reviewed the the reports and find they do not support Hinkle's contention. They contain no opinion as to cause of death. Further, there are no death certificates contained in the record nor attached to Hinkle's motion to withdraw his pleas. While Hinkle claims the state withheld the death certificates, and his counsel failed to provide him with the toxicology reports, the record is devoid of any evidence to support either contention. Hinkle supports his claims with only his own self-serving affidavit. Second, any defects in discovery or representation are matters that could have been

raised in a direct appeal but were not and are therefore barred by res judicata. The trial court therefore properly denied Hinkle's motion without a hearing.

{¶ 37} Hinkle also faults the trial court for failing to review the toxicology reports and his affidavit, and adopting the state's findings of fact and conclusions of law. However, the trial court's judgment entry indicates it reviewed Hinkle's motion and Hinkle points to no evidence to the contrary. The judgment entry also does not indicate it adopted the state's findings of fact and conclusions of law. In fact, the record is devoid of any evidence that the state ever submitted the same.

{¶ 38} Hinkle further faults the trial court for denying his June 13, 2024 public records request for the death certificates of each victim. We note the trial court never ruled on this motion. Generally, when a trial court fails to rule on a motion, we presume it denied the motion. *State v. Barcus*, 2015-Ohio-2255, ¶ 23 (5th Dist.) In this matter, however, we note Hinkle filed his notice of appeal 11 business days after he filed his motion for the death certificates and without obtaining a ruling on his motion. "With few exceptions, a trial court loses jurisdiction over a case once a notice of appeal is filed." *Middleton v. Luna's Restaurant & Deli, L.L.C.*, 2012-Ohio-348, ¶11 (5th Dist.).

{¶ 39} In summary, Hinkle's belief that there was a potential challenge to the state's evidence does not invalidate his plea. See, e.g., *State v. Piacella*, 27 Ohio St.2d 92, 94 (1971), quoting *Brady v. United States*, 397 U.S. 742, 757 (1970) (A plea is not invalidated by a defendant's failure to "correctly assess every relevant factor" or "because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State's case[.]"); *State v. Graham*, 2024-Ohio-1300, ¶27 (6th Dist.). The challenges raised by Hinkle were either barred by res judicata or without merit and the

trial court was not required to hold a hearing on the motion. Accordingly, the first, second, third, fourth and thirteenth assignments of error are overruled.

## V, VIII, IX, X, XI, XII

{¶ 40} In his fifth, eighth, ninth, tenth, eleventh, and twelfth assignments of error, Hinkle alleges he was denied effective assistance of trial counsel. We disagree.

## Applicable Law

{¶ 41}  To prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate: (1) deficient performance by counsel, i.e., that counsel's performance fell below an objective standard of reasonable representation, and (2) that counsel's errors prejudiced the defendant, i.e., a reasonable probability that but for counsel's errors, the result of the trial or proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–688 (1984); *State v. Bradley*, 42 Ohio St.3d 136 (1989), paragraphs two and three of the syllabus. "Reasonable probability" is "probability sufficient to undermine confidence in the outcome." *Strickland* at 694.

## Hinkle's Arguments

{¶ 42} Hinkle alleges trial counsel failed to: 1.) show him the toxicology reports and death certificates; 2.) adequately investigate the case and possible defenses before advising Hinkle to plead; 3.) inform him of the elements of the offenses of involuntary manslaughter and corrupting another with drugs; 4.) advise him that the state had insufficient evidence to convict him.

{¶ 43}  As noted above, the issue of trial counsel's alleged failures could have been raised on direct appeal. A criminal defendant cannot raise any issue in a post-sentence

motion to withdraw a guilty plea that was or could have been raised at trial or on direct appeal. *State v. Bro*wn, 167 Ohio App.3d 239, ¶7 (10th Dist.). Moreover, as also noted above, Hinkle has failed to support his allegations of ineffective assistance of trial counsel with evidentiary-quality materials.

{¶ 44} Accordingly, Hinkle's fifth, eighth, ninth, tenth, eleventh, and twelfth assignments of error are overruled.

### VI, XIII

{¶ 45} In his sixth and fourteenth assignments of error, Hinkle alleges prosecutorial misconduct. He alleges the prosecutor 1.) misrepresented the facts and evidence during the plea negotiation process and plea; 2.) committed a *Brady* violation by withholding the death certificates; and 3.) lead him to believe that if he testified against his co-defendants he would receive a reduced sentence.

{¶ 46} Again, Hinkle fails to support his allegations with evidentiary-quality materials, the record does not support his allegations, and his complaints are barred. Moreover, during the trial court's Crim.R. 11 plea colloquy Hinkle stated he had not been promised anything other than the state's agreement to dismiss certain charges and to make no recommendation during sentencing and stipulated to the facts of the underlying offenses as recited by the state on the record. (T.) 11-19.

{¶ 47} Hinkle's *Brady* argument is also without merit. There is nothing in the record to support a finding that the death certificates are exculpatory or that they were not provided in discovery. Hinkle extrapolates his theory that they are exculpatory from the toxicology reports alone which as discussed previously, provide no such conclusion.

{¶ 48} The sixth and fourteenth assignments of error are overruled.

VII

{¶ 49} Hinkle's remaining assignment of error alleges both prosecutorial misconduct and ineffective assistance of counsel. In this assignment of error, he rehashes his previous complaints against the state and trial counsel, but claims his trial counsel "conspired with the prosecutor to conceal, withhold and prevent Appellant from reviewing the Toxicology report and the Coroner's Death Certificate Report listing the cause of death of [L.C.] and [L.W.], prior to counsel advising him to plead guilty, and prior to pleading guilty." Brief of appellant at 13.

{¶ 50} Upon review, we find no evidence in the record, nor has Hinkle provided any evidence, to support a conclusion that the state and Hinkle's counsel were joined in a conspiracy to withhold or conceal any evidence from Hinkle.

{¶ 51} Hinkle's seventh assignment of error is overruled

Conclusion

{¶ 52} We are unpersuaded the trial court abused its discretion in declining to find a manifest injustice warranting the extraordinary step of withdrawing appellant's guilty pleas. We therefore affirm the trial court's decision overruling Hinkle's motion to withdraw his guilty pleas.

{¶ 53} The judgment of the Muskingum County Court of Common Pleas is affirmed.


By King, J.,

Delaney, P.J. and

Baldwin, J. concur.